The City of Baxter Springs v. The Baxter Springs Light and Power Company.

No. 12,474.   ( 68 Pac. 63.)

SYLLABUS BY THE COURT.

1. CITY AND CITY OFFICERS— *Contract with Light Company.* An ordinance of a city, duly passed and published, conferring certain privileges and imposing certain duties upon an electric light company which under the charter of the city it had power to confer, the terms of which ordinance were accepted by the company as therein provided, constitutes a contract between the city and such company, binding upon both.

2. ———— *Proof of Acceptance by Light Company.* To show its acceptance of the terms of such ordinance, the company may introduce a written receipt, signed by the city clerk, that a written acceptance of the terms thereof had been left with him, the ordinance itself providing that the company should file with the clerk of the city a written acceptance of the terms thereof within a given time.

3. ———— *Designation of Number and Location of Lights not a Contract.* Such ordinance provided that the company should furnish at a price therein named as many lights as the city might order, to be located where it should order, within certain limits. *Held,* that such order need not be expressed in the form of an ordinance, although the charter of the city provides that it can only contract by ordinance, the mere designation of number and location of lamps not being a contract.

4. ———— *Estoppel Applies to Municipalities.* An infirmity in an executory contract which might be taken advantage of by its repudiation before execution will not avail to excuse from payment for benefits received thereunder after execution. This rule applies to a municipality as well as to an individual.

5. ———— *Contract— Oral Evidence.* It is competent to show the acts of the parties to a contract ambiguous in its terms, as tending to explain their understanding thereof.

Error from Cherokee district court; A. H. SKIDMORE, judge.   Opinion filed March 8, 1902.   Affirmed.

*W. R. Cowley,* for plaintiff in error.

*E. M. Tracewell,* and *Blue & Glasse,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J. : This was an action by the Baxter Springs Light and Power Company against the city of Baxter Springs to recover for electric-light service furnished to the city upon its streets. After the issues were joined the case was referred to a referee to make findings of fact and of law. This he did, and to several of these findings exceptions were taken and filed on the part of the city, which exceptions were nearly all overruled by the trial court, and judgment rendered for the company and against the city on the findings of the referee. The errors complained of arise out of the overruling of these exceptions. They will be considered in the order in which they were presented.

The facts necessary to a proper understanding and discussion of them are as follows : On December 20, 1888, the city council passed ordinance No. 52, by which the company was authorized to erect, operate and maintain a system of electric lights in said city. This ordinance also granted to it the right to use sufficient water-power from a dam owned by the city across Spring river, for the purpose of operating such light and power plant. The sections of the ordinance involved in this discussion are as follows :

"SEC. 3. That in consideration of the benefits to be derived by the said city of Baxter Springs by said company constructing and establishing said light and power plant, the said city of Baxter Springs hereby grants to the said company the right to use fifty (50) horsepower to operate their machinery, provided there shall remain from the wheels now in and running at the dam across Spring river owned by said city that amount of horse-power over and above what said city already granted to Messrs. Allen Brothers and Messrs. Wil-

lard and Morrison ; if, however, said wheels are found to be insufficient to furnish said power, then the grantees shall have the right to place a water-wheel in the west pit of the forebay and connect the same with the main shaft now in.  It being agreed that said city assumes no liability or expense in putting in or maintaining said power ; and in case it becomes necessary at any time to repair the dam or any part thereof, or any appurtenances thereto, in order to maintain said power at said dam in running order, the said grantees agree to pay for said repairs the ratio that their power bears to the whole of motor power used at said dam ; also, the said city of Baxter Springs hereby grants to said company the right to erect and maintain on their ground at or near the main shaft at said dam such buildings and make such connections as may be necessary to operate and carry on said light and power plant with the right of way to and from said ground.''

"Sec. 6.  In further consideration of the rights and privileges therein granted, said grantees agree to furnish and maintain free of charge lights for the city hall, to be located and adjusted in such manner as shall fully light said hall for all kinds of entertainments and amusements, whether of public or private entertainment, conducted by said city or private individuals, by consent or authority of said city, and council chamber during the continuance of this franchise, said city to be at the expense of maintaining and keeping in order said lamps after they have been placed in position ; also said grantee is to furnish said city as many incandescent lights as said city may order, to be located by said city within one block of the lines of said wires, whenever said city shall notify said light and power company that they desire the same. said lights to be put up and maintained during the existence of this franchise and whenever so ordered Said city hereby agrees to pay said company, its successors or assigns, the following rates :

"Lamps of 16 candle-power, $10.80 each per year
"Lamps of 29 candle-power, $13.20 each per year

38—64 KAN.

"Lamps of 32 candle-power, $15.60 each per year.
"Payments to be made semiannually, on the first day of February and August of each year."

This ordinance was to go into effect after its publication, provided the company, within five days after its passage, should file with the clerk of the city its written acceptance of the terms thereof. The plant was erected and put in operation so that on or about April 20, 1889, it was ready for operation, and from that time until the last of the year 1892 the company furnished twenty-five sixteen-candle-power lights for the lighting of the streets, and received semiannual payments therefor as provided by section 6. Then there arose a controversy as to whether the company was bound, under the ordinance, to furnish an all-night service, or only lights until 12 : 30 A. M., as they had been furnishing. There was no adjustment of this controversy between the parties, but the company continued to furnish lights as they had theretofore done, without objection on the part of the city up to the time when this action was brought to recover compensation therefor under the terms of the ordinance. The principal controversy was as to whether the company was required to furnish all-night lights, or whether it was only required to furnish lights until midnight.

The exceptions filed by the city to the findings of fact went to the admissibility of various items of evidence offered by the company. It sought to establish its contract with the city, and for this purpose, having pleaded ordinance No. 52, it desired to show its written acceptance thereof, as provided therein, and, to do this, introduced the following paper :

"BAXTER SPRINGS, KAN., December 22, 1888.
"Received from the Baxter Springs Light and

Power Company their written acceptance of the terms of the electric-light-and-power franchise ordinance passed December 20, 1888.

"E. B. CORSE, *City Clerk.*"

The reception of this paper by the referee is urged as error, and it is claimed that the written acceptance itself should have been introduced instead of the written acknowledgment of its receipt; that had such written acceptance itself been introduced, it might have shown some change of the terms of the proffered contract contained in the ordinance. We do not think that this claim is well founded. The ordinance itself provided that it might be accepted by the filing with the clerk of a writing indicating such acceptance. The receipt of the clerk was at least *prima facie* evidence that said writing had been filed with him; that the company had done what the ordinance required it to do to indicate that it had accepted the provisions of the same. It seems to be agreed that the receipt only indicates that the acceptance had been received by the clerk, not filed. Whether it was filed or not makes no difference. The company could not file it. It had taken the written acceptance to the clerk, the officer whom the ordinance indicated was the proper one with whom to deposit the same. We think this evidence sufficient to sustain the referee's finding that the company had accepted the terms of the ordinance, and that out of such ordinance and its acceptance arose a contract.

The referee further found that out of the contract thus created grew the obligation on the part of the company to furnish as many incandescent lights as the city should order, such lights to be placed where the city should designate, for which it was to pay the company at the rate of $10.80 per year for each sixteen-

candle-power lamp, to be paid semiannually, on the first day of February and August in each year. It is contended that this finding is unauthorized by the evidence, for the reason, first, that in the original petition filed by the company the claim was made that the liability grew out of an oral contract, and not out of a contract created by the passage of the ordinance and its acceptance, as set out in a subsequent amended one, and it is insisted by the city that, inasmuch as the claim as originally made was that the contract was an oral one, the amended petition could not change that issue. There is no merit in this contention. The office of an amended pleading is to restate matters incorrectly or inadvertently pleaded at first, so that the issues between the parties may be accurately stated, to the end that their rights be correctly ascertained.

It is further contended that because section 6 does not specify the number of lights which were to be furnished, no contract was ever made for the furnishing of any, because the city could only speak as to the matter through an ordinance. The records of the city council show that on April 23, 1888, "it was ordered that twenty-five electric lights be put in on the streets, to be located by the committee on streets and alleys and the mayor." It is further shown by the oral evidence that the lights were put in in accordance with the directions of this committee and the mayor, but it is claimed that, inasmuch as there was no showing made that this committee ever reported to the city council, or that such report was confirmed and ratified by the city council by ordinance or resolution, no contract was consummated for the putting in of these lights, and many authorities are cited in support of the proposition that contracts can only be entered into

in the formal manner indicated. The correctness of this proposition we do not question; its application to this case we do. The contract was and is contained in the terms of the ordinance, and in this respect it was to furnish as many incandescent lights as the city should order. The number of lights and their location within the limits prescribed by the ordinance were to depend upon the order of the city, not upon further negotiation. The company had no option in the matter. The number to be put in was not a matter of contract; nothing further was required than the order of the city, and upon this order the company was bound to put them in. This order was properly expressed by the entry made upon the records.

It is further contended that the power to locate these lights, being a power to contract, must be exercised by the council itself and could not be delegated. What we have already said disposes of this contention.

If we, however, should allow the correctness of the city's contention that no written acceptance of the terms of the ordinance was ever filed as provided therein, and that no specific contract as to the number of lights provided thereby was shown, still we might not adopt the conclusion that the light company could not recover for the want of a contract, because, over and beyond all this, it appears without question that the light company had proceeded to erect its plant and had put in the lights as required; had furnished the same to the city in its city hall and council chamber and upon its streets for a period of three years without objection or complaint in any manner whatever, and had carried out its part of the contract. This all being so, the city may not now question the regularity of this contract. A contract good enough to obtain benefits

under is good enough to warrant a recovery of payment for such benefits. While the contract remained an executory one, the city might require its acceptance in accordance with its terms, but when it has been executed on the part of all concerned, no such objection can be entertained. This rule of ordinary morals applies as strongly to a municipality as to an individual. ( *Water-works Co. v. City of Columbus*, 48 Kan. 99, 28 Pac. 1097 ; Green's Brice's Ult. Vir. 372, note *a* ; *Water Co. v. City of Aurora*, 129 Mo. 584, 31 S. W. 946.)

Again, exceptions were taken to finding 8, which is that from December 1, 1892, to June 5, 1895, the company had maintained an average of twenty-five lamps, "according to the terms of said contract." The objection to this finding especially is that the contract required the maintaining of these lights for an all-night service and not a half-night service, as was done. Considerable oral evidence was introduced before the referee as to what the understanding of the parties was at the time of the enactment of the ordinance, in respect to this matter. It will be observed that the ordinance itself is silent upon this subject. It was competent, therefore, to offer oral evidence to show the intention of the parties relative thereto, and for this purpose the acceptance and payment on the part of the city for such half-night service from the date of its installation, in April, 1889 to December 1, 1892, was introduced. We think that such evidence was entirely competent for this purpose. Where a contract is ambiguous in its terms, a construction given to it by the parties thereto and by their actions thereunder is competent to explain their understanding of such contract. ( *Manufacturing Co. v. Cruzan*, 63 Kan. 411, 65 Pac. 647 ; Beach, Mod. Law of Cont. § 721.)

As the referee found that a midnight service was in accordance with the contract, and as this was found upon conflicting evidence, and as the finding received the approval of the trial court, we may not set the same aside.

As a part of its defense the city pleaded an offset, in which it alleged that it had been at a great expense in repairing the dam across Spring river, from which the light company had obtained its power to operate this plant, and claimed that the company should pay one-half of such expense. This calls for a construction of section 3 of the ordinance above quoted. The claim is made on the part of the city that by that section the company was bound to contribute to the maintenance of the dam in any event, while the company claims that it was to contribute to such maintenance only in the event that it should find it necessary to put in an extra wheel with which to furnish additional power; in short, that the city agreed to furnish all the power necessary without any charge to the company, except in case it should be found necessary to add to the power already in, and in that case the company should contribute its share to the maintenance of such additional power. The language of the section is :

"In case it becomes necessary at any time to repair the dam or any part thereof or any appurtenances thereto in order to maintain said power at said dam in running order said grantee (the company) agrees to pay for said repairs."

The proper construction is not as clear as it might be, but applying the accepted canons of construction, which are that where reference is made to something precedent, the last item next before such reference must be held to be intended, we conclude that the

"said power" in the above quotation means the power obtained by the placing of the extra wheel in the forebay, and that the company was not liable for repairs to the dam except it found it necessary to place such additional wheel. This was the construction given by the referee and confirmed by the court.

Upon the whole case, we find that the ordinance by the actual fulfilment of its terms constituted the contract between the light company and the city ; that there was no error in the findings of the referee that the understanding and agreement was that half-night lights should be provided, instead of all-night lights, and that the company was not bound to contribute in part to the expense necessary to the repair of the dam.

Some objection is made by the plaintiff in error that interest was allowed by the referee upon some of the bills of the light company, which should not have been done. This is probably the case, for we find that the district court corrected the finding of the referee in this matter.

Having reviewed the entire case, we find no error in the judgment of the district court. It will therefore be affirmed.

Smith, Greene, JJ., concurring.