No. 18,318.

THE BELOIT WATER COMPANY, *Appellant*, v. THE CITY
OF BELOIT, *Appellee.*

SYLLABUS BY THE COURT.

SALE—*Waterworks to City—Contract—Interest on Bonds Prop-
erly Applied on Hydrant Rentals.* A contract of sale of water-
works to a city was made by a written proposition of the
water company, and an acceptance with modification by reso-
lution and ordinance of the city. By a previous contract the
city had agreed to pay certain hydrant rentals at the state
fiscal agency, which by subsequent agreement were to be ap-
plied to the payment of interest on the bonds of the water
company, also payable at the same agency. The city held
some of these bonds, and instead of remitting the hydrant
rental the interest coupons were delivered to the water com-
pany in payment of the hydrant rental. After a time the
city ceased paying the rental, and interest payments on the
bonds ceased at the same time. The contract of sale was then
made, in which the city agreed to pay the hydrant rental from
the date of default to the date of transfer and to cancel and
surrender the bonds it held and all unpaid coupons, and to
furnish evidence that all accrued interest had been paid. In
correspondence between the date of the contract and the trans-
fer, relating mainly to the assembling of securities and the
release of the mortgage, the water company insisted that the
hydrant rental should be paid in full to the date of delivery
of its deed, and the city indicated its understanding that
interest accruing upon the bonds it held should be applied on
the hydrant rental. No reference was made to this claim of
the city by the company, although it continued the corre-
spondence for some time. In one letter the city stated the
sum which would be due on hydrant rental at the date of the
contemplated transfer, which was much less than the full
amount, thus indicating a purpose to claim a credit. But the
company made no inquiry or objection. Finally the company
directed the city attorney to compute the amount of the rental
and have a remittance made therefor. The computation was
made by allowing the rental from the date of the default to
the date of the transfer in full, and from that amount the
city deducted the interest for the same period on the bonds
which it held and remitted the balance.

It is held that the application of interest upon the hydrant rental is warranted by the contract, in the light of the course of dealing and the correspondence showing a practical interpretation of the contract by the parties authorizing such application.

Appeal from Mitchell district court; RICHARD M. PICKLER, judge. Opinion filed March 7, 1914. Affirmed.

*Frank T. Burnham,* of Kansas City, Mo., *Charles L. Hunt,* and *Park B. Pulsifer,* both of Concordia, for the appellant.

*Frank A. Lutz, A. E. Jordan, C. L. Kagey,* and *R. M. Anderson,* all of Beloit, for the appellee.

The opinion of the court was delivered by

BENSON, J.: In July, 1888, the city of Beloit sold its waterworks to Elmer E. Stevens for $27,000, and by ordinance granted to him, his associates and successors the right to maintain and operate them, and agreed to pay $3250 per year hydrant rental in two equal payments to be made on January 20 and July 20 of each year at the fiscal agency of the state in New York. It was also provided that this agreement to pay hydrant rental should be endorsed on the bonds that might be issued by Stevens and his associates. The city reserved the right of repurchase after ten years. The Beloit water company succeeded to the rights of Stevens, and issued its bonds to the amount of $54,000, dated August 1, 1888; $26,000 of these bonds were taken by the city in part payment of the consideration of the sale to Stevens, and the remainder to the amount of $28,000 were taken by the Quaker Valley Manufacturing Company, a corporation, of which Stevens was president. He was also president of the water company. These bonds were secured by mortgage on the waterworks to the Illinois Trust & Savings Bank, trustee, with principal and interest payable at the state

Water Co. v. City of Beloit.

fiscal agency in New York. Endorsed upon each bond
was a certificate that the city would pay $1625 hy-
drant rental to the order of the trustee named in the
mortgage on the 20th days of January and July in each
year. Interest on the bonds was made payable semi-
annually on February 1 and August 1.

On October 10, 1890, the water company leased its
plant to the Beloit Light and Water Company. It was
stipulated in the lease that the hydrant rental so made
payable at the state fiscal agency should be applied
to the payment of interest on the bonds. It will be
noticed that the hydrant rental was equal to and
slightly exceeded the interest payable every six months,
ten days after rentals were due, at the same place.
Payments of the rental were made accordingly, but
as the city held $26,000 of the bonds and was entitled
to a proportionate part of the hydrant rentals to pay
interest thereon, remittances to the fiscal agency were
only made of amounts sufficient to pay interest on the
bonds held by the Quaker company. The application
upon the bonds of the city was made in the office of the
city treasurer, and the coupons were taken by Mr.
Stevens, president of the water company, in lieu of that
amount of the hydrant rental. No specific agreement
was made for doing the business in that way, but it
was done for convenience and by common consent.
After a time payment of the hydrant rental at the
agency ceased altogether, and so much as would pay the
interest on the $28,000 of bonds held by the Quaker
company was paid over to Mr. Stevens, its president, to
be applied by him to take up coupons on bonds held by
that company. In this manner the hydrant rental was
applied on the interest on all the bonds down to Feb-
ruary 1, 1907. As the result of dissatisfaction with the
service about that time, the city determined to buy the
plant. Negotiations followed, culminating in a written
proposal by the company and a conditional acceptance
by the city by a resolution afterwards embodied in an

ordinance approved November 19, 1907, accepted by the company.

The consideration for the sale, as stated in the resolution of acceptance and ordinance was:

"The sum of $18,000 cash to be paid by said city and the cancellation by said city of the bonds of said Water Company, which said city now holds of the par value of $26,000, and upon the condition that said city shall pay all the hydrant rental which shall have accrued and be unpaid at the time of the execution and delivery of the deed or deeds of conveyance of said properties of said water company to said City."

The proposition stated the same consideration, contained various conditions, and after referring to the surrender of outstanding bonds of the Quaker company, proceeded:

"At the same time the said city and the said company shall cancel any unpaid coupons and forward the same to said trust company.

"The said city and the Quaker Valley Manufacturing Company shall further furnish to the said trust company satisfactory evidence that all interest coupons which have accrued (except those delivered into the hands of the trust company and canceled) have been fully paid, and that no interest remains unpaid upon any of said coupons."

The concluding clause of the proposition was:

"Fourth.    This proposition is made upon condition that the City of Beloit shall pay all the hydrant rental as per its contract with this corporation, which shall have accrued and be unpaid at the time of the execution and delivery of said deed or deeds of conveyance."

The resolution of acceptance provided that:

"Immediately after said moneys and said deeds have been deposited in said bank, said city shall cancel the $26,000 (par value) of the bonds of said Water Company now held by said city, and shall also cancel all unpaid coupons of said loans, and shall forward said bonds and said coupons to the Illinois Trust & Savings

Water Co. v. City of Beloit.

Bank of Chicago, Illinois, and shall at the same time furnish to said Savings Bank satisfactory evidence that all accrued interest coupons have been fully paid."

After the adoption of the ordinance considerable correspondence followed between the city attorney and representatives of the water company, mainly with reference to the assembling of the outstanding bonds, and coupons that had been clipped, and the release of the mortgage. An indemnifying bond was finally accepted by the trustee to cover a few coupons not presented, and the mortgage was released and the property transferred on March 28, 1908. No hydrant rental had been paid after January 20, 1907, and payment of interest on the bonds had not been made since February 1, 1907.

Upon the delivery of the deed and release of the mortgage the city remitted to Mr. Stevens $2295. This sum was determined by computing the hydrant rental for the full time from January 1, 1907, to March 28, 1908, deducting interest on the bonds held by the city from February 1, 1907, to the same date, and adding $75 which the city agreed to pay for the bond of indemnity. The claim of the plaintiff is that the accrued interest on the bonds ought not to have been deducted from the hydrant rental, and that the amount, $1642.89, deducted remains due. The action is for that amount.

It will be seen that the question to be decided is whether the city should be allowed the interest deducted from the hydrant rental.

The plaintiff's contention is that by the terms of the contract the unpaid coupons on the bonds held by the city were to be cancelled without payment, while by another provision the hydrant rental was to be paid in full to the execution of the deed.

The defendant contends that in accordance with the custom of adjusting these matters the coupons on the bonds held by the city should be deemed as applied in payment of hydrant rental during the negotiations ac—

cording to the plan which had been adopted of setting off interest against the hydrant rental; therefore, only the balance of such rental after applying the interest should be accounted for. It insists that the language of the contract, "the City . . . shall pay all the hydrant rental as per its contract with this corporation, which shall have accrued and be unpaid at the time of the execution and delivery of said deed," refers not only to the original contract to pay such rental to the water company, but to the modification by which the rental was diverted to pay interest on the bonds as indicated by the endorsement thereon and the course of dealing by which such application had been regularly made. The defendant also contends that the contract was so construed by the parties in the correspondence before referred to. This correspondence will now be examined. Reference to these matters is found in a letter from the city attorney, dated February 14, 1908, viz.:

"Will it be satisfactory to you, on behalf of the Water Company, to figure the hydrant rent to February 29, and also the interest on the $26000.00 of the water company's bonds which the city hold to that date?

"If so, kindly figure out just exactly the amount of hydrant rent due as you figure it to that date, and also the amount of interest on the above mentioned bonds to that date, and write me your figure."

On the 19th of the same month, without referring in any way to the matter of interest, the representative of the water company, in a letter to the city attorney, said:

"Without knowing at this t:me the exact date on which the trade will be consummated, it is, of course, impossible to calculate the amount of hydrant rental that will be due from the city to the Water Company and it will be satisfactory to have this claim against the city allowed at the first meeting of the council following the delivery of the deed."

In other letters to the city attorney the payment of hydrant rental to the date of the delivery of the deed is

Water Co. v. City of Beloit.

insisted upon, but no mention of the city's claim for interest is made. On March 10 the city attorney wrote (referring to a plan to close the deal) :

"Said city shall deposit in said Beloit State Bank, the hydrant rental mentioned in the first paragraph of page 2 of said original ordinance No. 388, which said hydrant rental shall be computed to the first of March, 1908, and shall be in the sum of $2090.00, and thereupon said bank shall deliver said abstracts of title to said City, and said $2090.00 to said Beloit Water Company."

In a letter dated March 20, the company said:

"The hydrant rental may be paid at the meeting of the council following the passing of the deed. I am not going to quibble about that.".

Answering that letter, the city attorney wrote on March 24:

"In case the deed and other papers are not delivered until April 1, we figure the amount of hydrant rental due the water company, would be $2242.40."

In reply the company consented to the delivery of the deed on payment of the $18,000, with the understanding that the hydrant rental would be allowed at the next meeting of the council, adding:

"If the matter with the exception of the hydrant rental, shall be closed up at once, I am going to rely upon you to make a correct computation of the amount of hydrant rental due the Company up to the date of such transfer of title, and see that it is allowed and remitted without further demand upon my part."

On receiving this letter the city attorney computed the hydrant rental, deducted the interest, and made the remittance already referred to.

It will be observed that the city attorney referred to the claim of the city to this interest in his letter of February 14, making an inquiry respecting it which was not answered. On March 10 he informed the company that the hydrant rental to March 1 would be $2090, and

on March 24, just before the deal was closed, stated that the amount would be $2242.40 on April 1. As the total hydrant rental to the last-named date would be over $3800, it must have been understood that a credit was claimed for the difference. Yet the president of the company, without objection or inquiry, immediately on March 28 asked the city attorney to make the computation and remit the amount found due the company. The silence of the company after being informed of the understanding of the city about this matter, coupled with its request to the city attorney to make the computation, which it must have understood would be upon the basis of his previous statements, indicates a purpose to accept such computation. The parties having thus interpreted the contract—which is susceptible of that interpretation—the plaintiff does not appear to have any cause of action to recover the amount so deducted.

It is true that the water company in its proposition and throughout the correspondence insisted on payment of the hydrant rental in full, but this has been done, if the interest is properly credited.

The water company relies especially upon a clause in the resolution of acceptance, already quoted, whereby the city agreed to cancel and forward to the trustee "all unpaid coupons" and to furnish evidence to the trustee of payment of "accrued interest coupons that had been fully paid." These expressions may have been intended to relate respectively to coupons not matured at the time of the transfer, and to coupons that at that time "have been fully paid." The entire clause refers to the future, when the transfer shall be made. If, however, this construction of the contract is doubtful, the interpretation by the parties in their correspondence and by their conduct should be adopted. This rule has been applied even though the language used may more strongly suggest another construction. (*Brick Co. v. Bailey,* 76 Kan. 42, 90 Pac. 803.)

In making the computation the city attorney inadvertently allowed hydrant rental from January 1, 1907, instead of January 20, of that year, the date to which payment had been made, resulting in an overcharge against the city of $186.76, pleaded as a counter claim, upon which judgment was rendered against the plaintiff. This being clearly a mistake in computation, no error is perceived in rendering judgment for the amount.

The judgment is affirmed.