No. 21,829.

WILLIAM CARLISLE, *Appellant,* v. THE FARMERS ELEVATOR AND BUSINESS ASSOCIATION (otherwise known as THE FARMERS UNION COÖPERATIVE SHIPPING AND BUSINESS ASSOCIATION), *Appellee.*

SYLLABUS BY THE COURT.

1. CONTRACT—*To Weigh and Load Plaintiff's Wheat into Cars—Breach by Elevator Company—Damages Recoverable.* Damages can be recovered for the violation of a contract by which an elevator is sold for $5,000, and by which the purchaser agrees, for three-fourths of a cent a bushel, "to weigh, dump, elevate and load into cars when requested" any part of the seller's wheat raised on land owned by him, when the purchaser, without justifiable excuse, refuses to receive the wheat offered by the seller.

2. SAME—*Duty of Shipping Association to Order Cars.* Under the terms of the contract, the material parts of which are described or set out in the opinion, and under the interpretation thereof by the parties thereto, it was the defendant's duty to order cars in which to load the plaintiff's grain.

3. SAME—*Evidence—Demurrer Wrongfully Sustained.* There was evidence to show the amount of the plaintiff's damage.

Carlisle v. Business Association.

Appeal from Graham district court; CHARLES I. SPARKS, judge. Opinion filed April 12, 1919. Reversed.

*W. L. Sayers,* of Hill City, for the appellant.

*O. O. Osborn,* and *W. B. Ham,* both of Stockton, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This action comes to this court on appeal from an order sustaining the defendant's demurrer to the plaintiff's evidence. That evidence showed that on June 19, 1915, the plaintiff entered into a written contract with the defendant, by which the plaintiff sold to the defendant an elevator at Bogue for $5,000, $2,500 of which was to be paid on July 1, 1915, and the remainder on August 1, 1915. By that contract the defendant agreed:

"To weigh, dump, elevate and load into cars when requested any part or all of the wheat, shelled corn, or other grains belonging to party of the first part, or to Oliver Munson and raised on land belonging to either of them and delivered at the elevator and second party also agrees to carefully clean out, prepare and repair for loading the cars into which the said grain is to be loaded so that no dirt shall remain in said cars and that all holes and places liable to leak grain shall be securely covered with burlap or lumber and also the side and openings or doorways in said cars shall be securely closed for at least twelve inches above the level of the grain when loaded, the doors furnished by the railroad company for this purpose being doubled and securely nailed and securely covered around the ends with burlap so that grain cannot leak out in shipping and for the performance of the above service, second party shall receive from the party for whom the service is rendered the sum of three-fourths of one cent per bushel for the grain so handled. The grain elevated and loaded under the above provisions shall be carefully weighed into the cars through the bin elevator weigher and an accurate record shall be preserved of the amount weighed into each car so that in case it becomes necessary to enter a claim for leakage or for any other purpose, the amount of the grain shipped in each such car with date of weighing and number of car can be correctly established."

The contract further stipulated that:

"The party of the second part will as far as possible keep the wheat or other grain of the first party or Oliver Munson in a bin by itself, if, however, the parties of the second part shall need the room or bin occupied by wheat of the first party, then the parties of the second part shall dispose of said grains and shall return to the party of the first part,

33—104 KAN.

the same number of bushels .of the same grain, of the same grade and 'test."

The evidence further showed that in the fall of 1915 the plaintiff hauled to the elevator wheat which the defendant refused to .receive, and which the plaintiff was then compelled to dump on the ground; that a part of that wheat was spoiled and part of it was lost; and that the plaintiff was compelled to pay out sums of money for material and labor to protect the wheat from the weather, and was compelled to pay out other sums of money to remove the wheat from the ground.

1. The principal question presented by the plaintiff arises out of the interpretation of the contract. The plaintiff argues that the contract obligated the defendant to handle the plaintiff's wheat on the terms named therein. The defendant contends that the contract was unilateral, in that it did not bind the plaintiff to deliver his wheat to the .defendant's elevator, and that, therefore, the defendant was not under any obligation to receive the plaintiff's wheat. The defendant argues that the contract is capable of separation into two parts, one of which concerns the sale of the elevator, and the other of which relates to handling grain for the plaintiff by . the defendant; that the consideration received by the plaintiff for the elevator was the money paid by the defendant; that there was no consideration for the promise made by the defendant in the contract to handle the plaintiff's wheat; and that, therefore, that part of the contract is unenforceable. The defendant's argument is not sound. ' When the plaintiff sold the elevator to. the defendant he received, as the consideration therefor, the defendant's promise to pay $5,000, and his promise to render certain service for a stated compensation. That service the defendant refused to render, although, for the promise to perform it, the defendant had received the elevator from the plaintiff. While the contract consisted of two parts, either of which could be obeyed and the other be violated by the defendant, and for the violation of either part the plaintiff could recover the damages sustained by him; yet a part of the consideration for handling the plaintiff's grain had been received by the defendant when it took over the elevator.

2. The defendant argues that it "did not promise to procure cars in which to ship plaintiff's grain, and plaintiff did not himself furnish cars for it"; that "it would be a strained con-

struction placed upon the contract to hold that defendant promised to do more than prepare the cars as it promised, weigh and load the wheat as promised, and keep an accurate record of weights as promised"; and that "it follows then that if the contract had been enforceable the defendant would not have violated it when plaintiff failed to furnish it cars in which to load his wheat."

The defendant's answer alleged:

"That since the 10th day of June, 1915, whenever defendant had elevator room or could obtain cars in which to place plaintiff's grain, defendant has received and loaded grain for plaintiff; and this defendant has done, not because it is bound legally to do so, but because of a promise so given plaintiff by defendant, as stated in Exhibit "A" of plaintiff's petition. . . . That although not legally bound to receive the wheat, for the damage in handling which plaintiff seeks to recover in this action, it would have received and loaded same but for its inability so to do, because its elevator was already filled, because it had no other place in which to store said grain of plaintiff, and could not obtain cars in which to load said wheat; of all of which facts, and conditions, defendant notified plaintiff before plaintiff hauled any of the wheat for which plaintiff claims damages of defendant."

The plaintiff's evidence showed that the defendant attended to ordering the cars; and that practically all of the wheat that had been dumped on the ground was finally received by the defendant and by it loaded into cars that it had ordered. The plaintiff, in his abstract, states that:

"The legal proposition involved is this: Is the contract set out as Exhibit 'A,' invalid because unilateral? The court held that it is."

On the subject under discussion, the contract is ambiguous; it does not in terms bind the defendant to furnish cars for the plaintiff, but it does obligate the defendant "to weigh, dump, elevate and load into cars when requested" any part of the plaintiff's wheat. That cannot be done without cars. They must be ordered by some one. It is not a strained interpretation of the contract to say that, under its terms, the defendant should order the cars. The evidence did not show that the plaintiff furnished cars. The transcript of the evidence shows that the defendant was seeking to avoid the contract on the ground that it was not binding on the defendant because it was unilateral. The answer shows that the defendant understood that it should order the cars; that it refused to receive the plaintiff's grain, not because cars had not been furnished by

the plaintiff, but because its elevator was filled, and it could not obtain cars in which to load the wheat. The evidence showed that, at the trial, the defendant interpreted the contract in the same manner as it was interpreted in the answer.

In *Brick Co. v. Bailey,* 76 Kan. 42, 90 Pac. 803, this court said:

"Where certain terms of a contract are ambiguous, but such terms have been construed and acted upon by the parties interested, such construction will be adopted, even though the language used may more strongly suggest another construction." (syl. ¶ 3.)

(See, also, *Baxter Springs v. Light Co.,* 64 Kan. 591, 68 Pac. 63; *Water Co. v. City of Beloit,* 91 Kan. 665, 672, 139 Pac. 388; *Kanzius v. Jenkins,* 98 Kan. 94, 97, 157 Pac. 417; 13 C. J. 546.)

From the contract, from the answer, from the evidence, and from the interpretation of the contract by the parties, the court concludes that it was the duty of the defendant to order the cars in which to load the plaintiff's wheat.

3. The defendant insists that there was no evidence to show the amount of the plaintiff's damage. A summary of the evidence concerning the damage sustained by the plaintiff has been made, and the court is of the opinion that the evidence was sufficient to compel its submission to the jury.

The demurrer to the evidence should have been overruled. The judgment is reversed, and the cause is remanded for trial.