Whitlow v. Board of Education.

---

No. 23,068.

JOSEPHINE WHITLOW, *Appellant*, v. THE BOARD OF EDUCATION OF THE CITY OF COUNCIL GROVE, *Appellee.*

SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE—*Sale of Land—By School Board—Statute of Frauds—Official Records—Sufficient Memorandum.* The minutes of a board of education, duly entered in the clerk's journal and approved at a later meeting of the board, recording the board's determination to sell a tract of ground owned by the board, and recording the vote thereon, and authorizing and directing the president and clerk of the board to execute a deed to the property in favor of the purchaser, are a sufficient memorandum of the contract to bind the board under the statute of frauds.

2. SAME—*Sale of Land—Completed Contract—Public Interest Involved —Specific Performance Refused.* Where a board of education has made a contract to sell a tract of school ground pursuant to its purpose to acquire a parcel of ground for a schoolhouse elsewhere, but later changes its determination and rescinds its contract, and decides to build the schoolhouse on the ground it had contracted to sell, preferring, if it must, to respond in damages to the contractee, a court of equity, in its discretion and with due consideration to the public interest involved, may decline to compel the school board to perform its contract to sell the property.

Appeal from Morris district court; ROSWELL L. KING, judge. Opinion filed March 12, 1921. Affirmed.

*W. S. Kretsinger,* of Emporia, for the appellant.

*W. J. Pirtle,* of Council Grove, for the appellee.

The opinion of the court was delivered by

DAWSON, J.:   The plaintiff brought this action against the board of education of Council Grove to enforce an alleged contract for the sale and conveyance of a block of ground.

The plaintiff alleged that she had purchased the property for $500 and had tendered the purchase price by certified check, and that the same had been accepted by E. N. Jones, a member of the board of education and chairman of the building and grounds committee and agent of the board; but the defendant board refused to execute a conveyance of the property.

Defendant's answer was an unverified general denial.

Excerpts from the recorded minutes of certain meetings of the board of education were set out in plaintiff's petition and reply, and were further elaborated in the evidence:

"Special meeting of the board of education was held Saturday, May 24th, 1919. . . . The purpose of the meeting was to consider a location for a colored school and to hire teachers for the vacancies. . . . Jones made the motion that the board sell block No. 2 McPherson's addition to the city of Council Grove to Josephine Whitlow for $500.00 and authorized the clerk and president to sign the deed. Motion seconded by Rhodes. Carried."

The minutes of June 2, 1919, recite:

"All members present except Rhodes. The minutes of the last regular and special meeting were read and approved."

The minutes of July 11, 1919, record:

"Meeting called to order by the president, Mr. Pemberton. . . . July 11th, 1919; the committee on building and grounds recommend the purchase of the property near Elm creek, now occupied by Fritz Krouse, known as the Blosser property, at a price of $800.00, subject to approval of title, and that the president and secretary execute a deed to the lots now owned by the school district near Elm creek bridge to Josephine Whitlow at a price of $500.00. We further recommend that your body proceed at once to purchase a place for a school building and at once receive bids proceeding to let a contract for a building."

Plaintiff's evidence tended to show that prior to May 24, 1919, the date of the first of the minutes quoted above, John Whitlow, the husband and agent of the plaintiff, had a conversation with Jones, the chairman of the building and grounds committee, touching the purchase of the lot, and on the day following, May 24, Jones told plaintiff:

"We passed a resolution to sell the lot to you last night or yesterday evening, and all that is necessary to finish up this business is the deed."

Plaintiff also showed that the other members of the board, except Pemberton, the president, advised Whitlow to the same effect. Whitlow testified:

"On the 10th day of July he [Jones] drove up and said 'If you will give me a check for $500.00 between now and to-morrow night we will give you that deed,' and I said 'I will give it to you now,' and he said, 'No, give it to me to-morrow.' The next day I took the check and signed it and said, 'Make this out to suit yourself.' He filled out the body of the check and I signed it. After I signed the check he told me to have it certified and I said all right, and I told him I would bring him the money if he wanted it, and he said, 'No, just have it certified.' I had it certified and gave it to Mr. Jones and he accepted it. I gave him that check on the 11th (of July) and on the morning of the 12th I went down and asked for the deed and he said that after the meeting Mr. Pemberton had refused to sign the deed. Not during the meeting, but after the meeting was over."

The evidence for the defendant tended to show that the proposition of selling the property was tentative and conditional. Pemberton president of the board testified:

"Q. I wish you would tell the court about the negotiations in regard to this colored school lot with Mrs. Whitlow in your own words. A. I think it was in May there was a motion made to build a colored school, to locate it on the Whitlow property, or the McPherson property, if it was satisfactory to the colored people. There was a petition circulated and it was satisfactory to the colored people and the building was sold. It run along then and then another matter came up in regard to the meeting of

May 24th when the meeting was called, the adjourned meeting was subject to the call of the president who was in town but was never notified of the call. Four members of the board met and' passed a resolution, which this meeting was called to transact business of locating a colored school and fill vacancies for teachers. . . .

"Q. Mr. Pemberton, in that resolution of July 11th it states that the building and grounds committee recommended the purchase of the property known as the Blosser property and that the president and secretary execute a deed to the lot now owned by the school district near Elm Creek to Josephine Whitlow, now was there anything in this resolution or understanding of the board whereby one transaction depended upon the other? . . . A. One depended on the other.

"Q. That they would not sell the Whitlow property (lot No. 2, McPherson) unless they bought the Blosser property to put the school building on and unless it was satisfactory to the colored folks. . . . A. With the understanding we could not sell the Whitlow property unless we had a location for the other building.

"Q. That depended on whether it was satisfactory to the colored folk? A. Yes, sir; it did.

"Q. I will ask you whether it was satisfactory to the colored folks to put the schoolhouse on the Blosser property rather than on the McPherson lot? A. No, sir."

There was some other evidence for defendant to the same effect.

Jones, who had chiefly conducted the negotiations with plaintiff's agent, Whitlow, testified that he did not have instructions to receive the check from Whitlow nor to carry any information to him. The check was made payable to the board; Jones retained it some time and then turned it over to the clerk, who returned it to Whitlow, and Whitlow brought it back to him. "I couldn't get rid of it," testified the clerk.

Defendant introduced the minutes of defendant's meeting of August 4:

"Jones made the motion that the Board rescind the action taken in regard to purchasing the Blosser lot for a location for the new school building. Rhodes seconded the motion. Carried."

Also the minutes of August 5:

"The Building and Grounds Committee beg leave to report that after thorough investigation we have come to the conclusion that the Board should build a schoolhouse on Lot 2, McPherson Addition to the City of Council Grove, and we recommend that the action be taken at once to erect a building thereon as contemplated. . . . The report of the committee was adopted."

Judgment was entered for defendant and plaintiff appeals.

With plaintiff's main contention this court is inclined to agree. There can be no doubt that the defendant board had the power to make this contract (Gen. Stat. 1915, § 9132), and that it did make it. The minutes of the board as recorded by the clerk are the authentic record which the law required to be kept. (Gen. Stat. 1915, § 9073.) The minutes recorded the board's determination to sell the property; those minutes were approved at a subsequent meeting of the board; the minutes recorded the board's approval of the sale of the property; the minutes first record the grant of authority to the president and clerk to execute a deed to plaintiff and later record the board's order that a deed to plaintiff be executed. No further negotiations to complete a contract were wanting; nothing remained to be done except the ministerial act of signing the deed by the president and clerk as they had been lawfully ordered to do. The authentic and undisputed minutes show that the acts of the board were unqualified and unconditional, and they were reduced to writing in the clerk's journal as the law required. Those minutes constituted a sufficient memorandum of the contract to bind the board under the statute of frauds (Gen. Stat. 1915, §§ 4888, 4889). The duly recorded minutes fairly answered every purpose of that statute.

(*School District v. Swayze,* 29 Kan. 211, syl. ¶ 3; *Baxter Springs v. Light Co.,* 64 Kan. 591, 68 Pac. 63; *The State v. Umbarger,* 69 Kan. 66, 76 Pac. 429; *Bank v. School District,* 102 Kan. 98, 103, 169 Pac. 202; *Manufacturing Co. v. Porter,* 103 Kan. 84, 172 Pac. 1018; *Bank v. City of Rosedale,* ante, p. 474; *McManus v. Boston,* 171 Mass. 152; *Western Timber Co. v. Kalama River L. Co.,* 42 Wash. 620, and note, 6 L. R. A., n. s., 397; 20 Cent. Dig., Evidence, §§ 1255, 1264; 10 Cyc. 1007; 11 Cyc. 397, 399; 35 Cyc. 876; 25 R. C. L. 669-674.)

The certified check, duly signed and delivered by the plaintiff, was sufficient to bind her to the contract, so there was no lack of mutuality.

But it must be borne in mind that a school board, while authorized to contract and while it may sue and be sued, is not designed for ordinary business purposes. It is created to conduct and foster the education of the children of the community. It is not adequately constructed for the maintenance of lit-

igious warfare.  Even if it had conveyed this property to plaintiff, it might have changed its mind and could have instituted proceedings immediately to repossess itself of this property for school purposes by condemnation proceedings.  The minutes of August 4 and 5, which show the defendant board's determination to rescind its prior action, also show its determination to build a schoolhouse on this property; and as no temporary injunction was asked by plaintiff, the trial court could presume that such determination was pursued and that a schoolhouse was either erected or in course of erection when this judgment was entered.  The minutes of August 5 go far enough to show a very good reason why the board rescinded the contract.  This, doubtless, the board did with its eyes open to the possibility of its liability in damages.  Moreover, the public interest that the schoolhouse be erected in the most advantageous place for the education of the young could neither be overlooked by the board nor by the trial court when it had to consider the propriety of equitable relief for the breach of the contract.  And so, while plaintiff had what would ordinarily be considered a contract enforceable by specific performance if the defendant were a mere private corporation or a private individual, yet equity does not lay so ready or so vigorous a hand upon a public official board to compel specific performance as it does to enforce the contracts of private parties.  And even as to private individuals equity often declines to interfere, but remands the litigants to such redress in damages as the law affords.  (25 R. C. L. 272.)  We do not forget that equitable assistance is more frequently granted to enforce contracts for the sale of real estate than other contracts.  But in *Construction Co. v. Sedgwick County,* 100 Kan. 394, 164 Pac. 281, where mandamus was sought to enforce a contract which had been made by a board of county commissioners, this court said:

"It does not follow that where the controlling body of a public corporation, in the exercise of its judgment as to governmental policy, sees fit to refuse to proceed with a contract to which it has committed itself, preferring to answer in damages for any resulting loss to the contractor rather than to carry out a course which it has determined not to be for the best interests of the community, it can be compelled to perform specifically its engagements by a writ of mandamus." (p. 396.)

In 25 R. C. L. 211 it is said:

"To compel the specific performance of contracts still is the exception, not the rule, and courts are slow to compel it in cases where it appears that paramount interests may be interfered with by their action."

(See, also, *Kendall and others v. Frey and others,* 74 Wis. 26, 17 A. S. R. 118, 120.)

This court is inclined to hold that the contract in question falls within this principle. We cannot say that the trial court abused its equitable discretion when it declined to compel specific performance of defendant's contract; and the judgment is therefore affirmed.