The Honorable Ralph M. Tanner State Representative, 10th District State Capitol, Room 426-S Topeka, Kansas 66612
The Honorable Bonnie Huy State Representative, 87th District State Capitol, Room 110-S Topeka, Kansas 66612
Dear Representatives Tanner and Huy:
You request our opinion regarding whether a unified school district may employ a person to act as a lobbyist and compensate that person with school funds derived from tax levies. You also ask whether a unified school district may use monies received through tax levies to pay dues or otherwise provide financial support to a political action committee.
In determining whether a unified school district may employ a person to act as a lobbyist and compensate the person for providing lobbying services, it must be remembered that a school district has only the power and authority delegated to it.
"A school district is an arm of the state existing only as a creature of the legislature to operate as a political subdivision of the state. A school district has only such power and authority as is granted by the legislature and its power to contract, including contracts for employment, is only such as is conferred either expressly or by necessary implication."[1]
In 1981, former Attorney General Robert T. Stephan reviewed the authority of a unified school district to expend school funds for the purpose of contributing to a lobbying effort directed towards a proposed state-wide severance tax. It was determined that no statute expressly granted such authority to a unified school district, nor could such authority be derived from the general grants of power derived through K.S.A. 72-8205. Therefore, a unified school district was prohibited from expending school district funds for the purpose of lobbying on the tax issue.[2]
Subsequently, the Legislature expanded the authority of a unified school district.
 "(a) The board of education of any school district is hereby authorized to offer employment to and employ lobbyists and other persons for lobbying and to pay any expenses incurred in connection therewith from the general fund of the school district.
 "(b) All expenditures heretofore made for the payment of expenses incurred by any school district in connection with or for the purpose of lobbying or the employment of lobbyists are hereby validated and approved in all respects, together with all proceedings authorizing such expenditures, and such expenditures and proceedings shall be valid as though they had been duly and legally authorized originally.
 "(c) As used in this section, the terms `lobbyist' and `lobbying' shall have the meanings respectively ascribed thereto in article 2 of chapter 46 of Kansas Statutes Annotated."[3]
The Legislature has, by enacting this statute, expressly conferred upon a unified school district the authority to employ a person as a lobbyist[4] who will engage in lobbying[5] activities. A unified school district may pay from its general fund any expenses incurred in connection with the employment of such a lobbyist.
The term "political action committee" is a "[p]opular term for a political committee that is neither a party committee nor an authorized committee of a candidate."[6] The Legislature has not by state statute provided a different definition for the term. It appears the Governmental Ethics Commission uses the terms "political action committee" and "political committee" interchangeably.[7] A "political committee" is:
 "[A]ny combination of two or more individuals or any person other than an individual, a major purpose of which is to expressly advocate the nomination, election or defeat of a clearly identified candidate for state or local office or make contributions to or expenditures for the nomination, election or defeat of a clearly identified candidate for state or local office."[8]
"Political committee" does not include a candidate committee or a party committee.[9] Our review of the second issue you present is limited to determining whether a school district may pay dues to or otherwise provide financial support to a political committee, a major purpose of which is to expressly advocate the nomination, election or defeat of a clearly identified candidate for state or local office or make contributions to or expenditures for the nomination, election or defeat of a clearly identified candidate for state or local office.
The ability of a unified school district to expend funds for the purpose of paying dues to or otherwise providing financial support to a political committee is subject to the same limitations as the school district's authority to enter into contracts of employment. It is necessary, therefore, to determine whether such authority is conferred by state statute, either expressly or by necessary implication. "[A]ny reasonable doubt as to the existence of such power should be resolved against its existence."[10]
Unified school districts receive monies through federal, state and local sources[11] and are required to establish a number of funds into which the monies are deposited and held. State statutes do not provide for the establishment of a fund for paying dues to or otherwise providing financial support to a political committee. Therefore, it must be determined whether such payments may be made from monies held in other funds of a unified school district.
Among the various funds established by unified school districts are: special education fund;[12] food service fund;[13] driver training fund;[14] adult education fund;[15] adult supplementary education fund;[16] vocational education fund;[17] area vocational school fund;[18] inservice education fund;[19] parent education program fund;[20] summer program fund;[21] extraordinary school program fund;[22] educational excellence grant program fund;[23] capital outlay levy fund;[24] and the elementary guidance fund.[25] This list may not include all funds that may be established by a unified school district. Consistently, however, the monies in the various funds may be expended only for the specific purposes for which the funds are established. The payment of dues or other financial support to a political committee is not included among the purposes for establishment of the funds. Therefore, such payments may not be made from the monies held in these funds.
In addition to the special funds, a unified school district may establish a contingency reserve fund,[26] a supplemental general fund[27] and a general fund. Monies in a contingency reserve fund may be used "for payment of expenses of a district attributable to financial contingencies which were not anticipated at the time of adoption of the general fund budget."[28] "[A]mounts in the supplemental general fund may be expended for any purpose for which expenditures from the general fund are authorized," excluding payments under any lease-purchase agreement involving the acquisition of land or buildings.[29] Operating expenses of the school district are paid from the general fund.[30]
Whether a school district may use monies in its general, supplemental general, or contingency reserve fund for payment of dues to or contributions for the financial support of a political committee depends on whether such payments constitute operating expenses of the school district.
Operating expenses include "the total expenditures and lawful transfers from the general fund of a district during a school year for all purposes. . . ."[31] Specifically excluded from designation as operating expenses are certain payments to other unified school districts, maintenance of student activities that are reimbursed, lawful expenditures from other funds of the school district, expenditures for educational services for pupils residing at the Flint Hills Job Corps Center or for pupils confined in a juvenile detention center, and certain programs financed in whole or in part by federal funds.[32]
It has been determined that:
 "The board may expend funds of the district only in the discharge of its statutory duties, and in the promotion of the public duties committed to it by law. A school board `is created to conduct and foster the education of the children of the community.' Whitlow v. Board of Education, 108 Kan. 604 (1921). The board has no authority, whatever, to expend funds of the district for any purpose other than those entrusted to it by law. The board has no authority to contract for advertising, or otherwise to spend funds of the district, to support or oppose questions of public policy submitted to the electorate, proposed constitutional amendments, or candidacies for public office. It makes no difference that a proposed constitutional amendment e.g., may be deemed by the board to have some bearing to the interests of education, as it perceives them, for the board in its corporate capacity has no authority to expend public funds to promote or oppose a particular political viewpoint, or for the purpose of seeking to influence the views of the electorate upon a question submitted to them for their decision according to law."[33]
Neither advocating a position on nor attempting to influence the nomination or election of candidates for political office is a duty placed upon a unified school district, either by express language in a statute or by necessary implication. Such a function, therefore, does not fall within the normal operations of a school district. Because such expenditures do not constitute operating expenses of a school district, monies held in the general, supplemental general, or contingency reserve fund of the school district may not be used to pay costs associated with attempting to advocate a position on or attempting to influence the nomination or election of candidates for political office. A school district may not alter or expand the authority conferred by state statute.[34]
Further, the doctrine of expressio unius est exclusio alterius is applicable in determining whether a school district may use monies in its general, supplemental general, or contingency reserve fund for payment of dues or other financial support to a political committee. The doctrine dictates that the inclusion of one thing in a statutory scheme implies the exclusion of another.[35] A board of education may authorize the payment to any qualifying high school activities association of monies held in any public or activity fund of the school district.[36] State statute expressly confers upon a board of education the authority to "to appropriate money out of its general fund to pay the annual dues in the Kansas association of school boards."[37] There is no similar provision authorizing payment of dues or other financial support to a political committee. Payment of dues or other financial support to a political committee is not an operating expense of a school district. Therefore, a board of education for a unified school district may not expend monies held in its general, supplemental general, or contingency reserve fund for payment of dues or other financial support to a political committee.
In review, monies held in the general fund of a unified school district may be expended for payment of any expenses incurred in connection with the school district's employment of a lobbyist. A board of education for a unified school district may not expend monies derived from tax levies for the payment of dues or other financial support to a political committee.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] NEA-Wichita v. U.S.D. No. 259, 234 Kan. 512, 517 (1983), quotingGragg v. U.S.D. No. 287, 6 Kan. App. 2d 152, Syl. ¶ 3 (1981).
[2] Attorney General Opinion No. 81-216.
[3] K.S.A. 72-53,108.
[4] K.S.A. 46-222.
[5] K.S.A. 46-225.
[6] Information Division, Federal Election Commission, Campaign Guide for Corporations and Labor Organizations, 85 (June, 2001); Information Division, Federal Election Commission, Campaign Guide for Congressional Candidates and Committees, 74 (April, 1999); Information Division, Federal Election Commission, Campaign Guide for Political Party Committees, 84 (August, 1996); Information Division, Federal Election Commission, Campaign Guide of Nonconnected Committees, 63 (March, 1995).
[7] See Governmental Ethics Commission Opinions No. 1999-44, 1998-18; Kansas Commission on Governmental Standards and Conduct Opinion No. 1993-41.
[8] K.S.A. 2001 Supp. 25-4143(k)(1).
[9] K.S.A. 2001 Supp. 25-4143(k)(2).
[10] Hobart v. Board of Education of Unified School District No. 309,230 Kan. 375, 383 (1981), quoting State, ex rel., v. Rural High SchoolDistrict No. 7, 171 Kan. 437, Syl. ¶ 1 (1951).
[11] See K.S.A. 72-6407 et seq.; Unified School District No. 229 v.State, 256 Kan. 232, 243-51 (1994).
[12] K.S.A. 2001 Supp. 72-6420.
[13] K.S.A. 72-6424.
[14] K.S.A. 72-6423.
[15] K.S.A. 72-4523.
[16] K.S.A. 2001 Supp. 72-4525.
[17] K.S.A. 72-6421.
[18] K.S.A. 72-6422.
[19] K.S.A. 72-9609.
[20] K.S.A. 72-3607.
[21] K.S.A. 2001 Supp. 72-8237.
[22] K.S.A. 2001 Supp. 72-8238.
[23] K.S.A. 72-9905.
[24] K.S.A. 72-8803.
[25] See K.S.A. 72-9302.
[26] K.S.A. 2001 Supp. 72-6426.
[27] K.S.A. 2001 Supp. 72-6433.
[28] K.S.A. 2001 Supp. 72-6426(a).
[29] K.S.A. 2001 Supp. 72-6433(d)(2).
[30] K.S.A. 2001 Supp. 72-6409(a).
[31] K.S.A. 2001 Supp. 72-6409(b).
[32] K.S.A. 2001 Supp. 72-6430.
[33] Attorney General Opinion No. 81-216, quoting Attorney General Opinion No. 75-33 (emphasis in original). See also Attorney General Opinions No. 2001-13, 93-33.
[34] See Ottawa Education Ass'n v. Unified School District No. 290,233 Kan. 865, 869 (1983); Unified School District No. 207 v. NorthlandNat'l Bank, 20 Kan. App. 2d 321, 331 (1994); Unified School DistrictNo. 241 v. Swanson, 11 Kan. App. 2d 171, 173 (1986).
[35] Unified School District No. 501 v. Baker, 269 Kan. 239, 244
(2000); Dunn v. Unified School District No. 367, No. 84987 (Kan. Ct. of Appeals Feb. 8, 2002).
[36] K.S.A. 72-132. See Attorney General Opinion No. 87-15.
[37] K.S.A. 72-5326.