No. 22,528.

THE KANSAS ELECTRIC UTILITIES COMPANY, *Appellee*, v. THE KANSAS CITY, KAW VALLEY & WESTERN RAILWAY COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE — *Contract to Convey and Transfer Certain Street Railway Property—Consideration*. The contract sued on was not void for want of consideration.

2. SAME—*Contract—Assignment Valid*. The contract under which the plaintiff claims was by its terms made assignable and its assignment— having been recognized by the parties and by the city in various ways during a course of dealing covering several years—is held valid.

3. SAME — *Street Railroad Franchise — Within the City — Not Under Jurisdiction of State Utilities Commission*. The franchise granted to the plaintiff's assignor covered a street-car system located within the city of Lawrence and was therefore not under the jurisdiction of the state utilities commission, and the consent of that body to its assignment to the plaintiff was not necessary.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed June 5, 1920. Affirmed. (Opinion on rehearing filed February 12, 1921, post p. 293. Judgment of affirmance adhered to.)

*J. E. McFadden, O. Q. Claflin, jr.*, both of Kansas City, and *S. D. Bishop*, of Lawrence, for the appellant.

*Hugh Means*, and *Raymond F. Rice*, both of Lawrence, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued for specific performance and for damages, and the court found in its favor on the first cause of action, the only one involved herein. The defendant appeals, and contends that the contract sued on was void for want of consideration, that it was not assignable, and that it was not approved by the utilities commission.

The petition alleged in substance that the plaintiff as successor of the Lawrence Railway & Light Company was operating a line of street railway in Lawrence under a franchise of the city authorizing the construction of a line from Seventh and Massachusetts streets to the south end of the Kansas river bridge, and over other portions of the streets of the city; that the Lawrence company contracted with the defendant in October, 1915, that the latter might lay and maintain street-railway tracks upon certain portions of the streets, including that between Seventh and the south end of the bridge; that March 1, 1916, the defendant, with the consent and acquiescence of the city, began laying track, and completed the part last referred to July 28, 1916, and then began running its cars thereover and has ever since continued so to do; that April 9, 1918, the city passed an ordinance granting the defendant a franchise to operate a standard-gauge electric railroad on certain streets, including those already referred to; that in the contract between the Lawrence company and the defendant it was provided that should the former at any time desire to use any of the tracks for the purpose of its own street railway it should be authorized to do so upon paying the appraised value, and upon such payment such tracks should become its property; that on December 21, 1915, the Lawrence company conveyed all its property and contracts to the plaintiff, and that in 1917 the plaintiff demanded the right to take over the track in the 500 and 600 blocks on Massachusetts street, and finally tendered the proper amount, but the defendant refused to carry out such agreement.

The contract between the Lawrence company and the defendant provides among other things that it shall endure and be in full force—

"During the term of the franchise of the Lawrence Company, . . . and during all of said term The Interurban Company, its successors and

assigns are authorized and agree to use the tracks of the Lawrence Company."

Provision was made touching the operation of the tracks, the payment to be made for running over them, and other matters not necessary to set forth. The defendant agreed in its contract to build the electric line from Kansas City, at least as far as Lawrence, and have it in operation within two years, and it was provided that the Lawrence company should upon request provide certain storage facilities for the Interurban company, also, that if the question should arise between the two companies concerning the construction of the line these parties could submit the question for arbitration. The first paragraph of section 19 of the contract is in the following words:

"It is understood and agreed that the terms, agreements and conditions of this contract shall be binding upon and shall be construed in favor of the successors and assigns of each of the parties hereto; provided, nothing herein contained shall authorize the Interurban Company to run or operate over the tracks of the Lawrence Company, any cars other than those run or operated by itself, its successors and assigns, for the transaction of its own business."

The ordinance of the city expressly granted to the Lawrence company "its successors and assigns" the right to operate cars over certain designated streets.

The answer denied any indebtedness to the plaintiff and asserted the invalidity of the contract for want of consideration, want of power of the Lawrence company to assign, or of the plaintiff to accept such assignment, and alleged that when the defendant contracted with the Lawrence company personal relations and personal confidence coupled with personal liabilities were involved and mutual rights entered into which were avoided by the pretended assignment of the contract, and further that the Lawrence company had no franchise.

The defendant asserts want of consideration because the Lawrence company's franchise had at that time expired. This ordinance became effective April 13, 1909, and gave the Lawrence company, its successors and assigns, permission and authority to locate, construct and operate an electric railroad over various named streets, including "from the south end of the Kansas river bridge south on Massachusetts street to the city limits." Section 3 provided that the franchise should stand

for twenty years after the passage of the ordinance, with provision for extension. Section 14 provided that the grantee should within fifteen days file a written acceptance, and within one year after such filing have ready five miles of its track and the remainder within twenty months of the granting of the franchise, unless delayed by strikes, litigation or other unavoidable causes beyond its control.

Turning to the contract, it must be observed that the right to lay tracks on the named portions of Massachusetts street was in addition to numerous other matters, including the right to lay track in North Lawrence and the use of the car barn. By section 14 the Lawrence company was to save the Interurban company harmless from suits, costs and damages arising from the former's negligence or failure, and pay all sums recovered against it therefor. Section 15 required the Lawrence company to make certain repairs at cost, plus ten per cent, when desired by the Interurban company. By section 16 it was to keep in condition and repair all of its equipment used in the operation of the cars in the city of Lawrence.

The franchise granted to the Lawrence company in April, 1909, provided in section 19 that if at any time a bridge should be constructed across the Kansas river "the grantee is given permission, so far as the city can legally grant such permission" to construct and operate its street railway over and across such bridge, and it seems to be conceded that this bridge was not constructed until December, 1916. It was testified that at the time the Lawrence company completed all of its tracks which were completed up to the time limit, it received $2,500 of its deposit, and that a bond was given to insure the construction of the line in North Lawrence. The president of the plaintiff company testified that in 1915, when the contract was made, there was a discussion touching the franchise of the local company, and it was mentioned that such company would build the two blocks between the Eldridge House and the bridge, but it was finally understood that the defendant would undertake to build all of it, the Lawrence company to reserve the right to purchase their leases; and that after the completion of the new bridge across the river the local company took steps towards instituting service to North

Lawrence, and some correspondence passed between the two companies.

On November 12, 1915, the Lawrence company wrote to the mayor and commissioners of the city touching the establishment of grades on Locust street. About that time the defendant wrote to the mayor and commissioners, accepting the provisions of ordinance No. 1127 granting it the right to use the new track. In November, 1915, an ordinance was passed establishing the grades on Locust street and the defendant's president and secretary wrote a letter accepting its terms, reciting in the letter that prior to the passage of the ordinance the defendant entered into a contract with the Lawrence company providing among other things that it might—

"Make, construct and maintain tracks on such portions of the streets of said city as the Lawrence Railway & Light Company is now or may hereafter be authorized to construct and operate its lines upon, and as are not now occupied by the Lawrence Railway & Light Company for such purposes."

The city passed Ordinance No. 1225 authorizing the defendant company to locate, construct and maintain a standard-gauge electric railway over certain streets in the city of Lawrence—

"Provided, That the rights of the grantee under this ordinance are in all respects subject to the rights heretofore granted to the Lawrence Railway & Light Company, its successors and assigns, by Ordinance No. 413 . . . and the ordinance supplemental thereto, and provided further, however, that said grantee shall not lay or construct any additional track or tracks upon any street or streets occupied by the track or tracks of the Lawrence Railway & Light Company, its successors and assigns, . . ."

It was further provided in section 12 that the grantee was to equip all local cars and to stop at certain streets and take on and discharge passengers—

"Until such time as service is provided by the Lawrence Railway & Light Company, its successors and assigns . . ."

This ordinance was accepted by the defendant company by a letter dated April 15, 1918. October 23, 1917, the city passed a resolution that it had considered four franchises with the defendant company, which had failed to accept two of them after promising to do so, and that the company was now a trespasser without any franchise or contract with the city,

and instructed the city attorney to draw an ordinance pro-
hibiting these companies from further extending their railroad
tracks in the city without first having obtained a franchise
from the city. January 15, 1918, the defendant applied for a
franchise. April 9, 1919, a franchise was granted the defend-
ant, and April 16 it was accepted. February 10, 1919, the city
commissioners passed a resolution reciting that the city had
waited patiently for the defendant and plaintiff companies to
furnish street-car service and that it was the sense of the
commission that these two companies enter into contract with
each other to enable street-car service to be had at the earliest
possible moment.

On January 27, 1917, in reply to a written notification that
the plaintiff wanted to purchase the track now in controversy,
the defendant's president replied to the letter "relative to the
contract between the Kansas Electric Utilities Co., successor
to the Lawrence Railway & Light Company, and the Kansas
City, Kaw Valley & Western Ry. Co.," that he would take up
the matter·immediately and confer with its officers in Law-
rence as to details, and said:

"As I understand it you do not wish to include in this purchase any of
the track on Locust St."

On May 10, 1917, the president wrote that he had taken up
the matter and that his people were under the impression that
it would be preferable if the plaintiff company would take
over all property in Lawrence except that on the bridge, and
closed as follows:

"In the meantime I will go ahead and have a meeting of our Board and
let you hear from me further."

The foregoing sufficiently shows that the city and the de-
fendant both recognized the contract, and the plaintiff as the
assignee of the Lawrence company, and looked to it to carry
out the contract. It also sufficiently shows that the contract
was not without consideration, and that the time limit fixed in
the franchise granted to the Lawrence company was not in-
sisted upon by the city or by the defendant, but that such ordi-
nance was considered and dealt with as valid, thereby giving a
practical construction by which the parties to this action are
bound.

The defendant contends in the second place that the contract carried with it elements of trust and confidence and was therefore not assignable without consent. It is suggested that it is not an agreement with one condition only which could be performed as well by one person as by another, but that it is of that peculiar character which gives to the defendant the right to choose with whom it shall deal. It is said that the defendant was dealing directly with the Lawrence company and had no knowledge that the plaintiff had already been incorporated and was soon to take over the contract. But the president of the plaintiff company testified that he was the former president of the Lawrence company and attended a conference in the spring of 1915 at which was discussed the franchise of the local company to operate in North Lawrence. He also said that in 1917 he had a conversation with Mr. Heim or Mr. Klemm of the defendant company at the time when the applications to the commissioner of public utilities of the Lawrence company to sell and the plaintiff company to buy were made, and that it was known to the officers of the defendant company that the applications were filed and the merger proposed.

It further appears that negotiations leading up to the purchase of the track involved herein continued without any suggestion as to the matter of assignment, and that arrangements between the assignee and the defendant touching the track and the operation of the properties were made without complaint on this ground.

Everybody knows that street-car and trolley properties are the frequent subjects of sale, and that franchises therefor are as frequently the subject of assignment, and this seems to have been recognized by the express terms of the contract, by the ordinance and its acceptance, and by the conduct and course of dealing between the parties hereto. There is no doubt that the defendant's theory as to the assignability of contracts is correct, and the authorities cited by it support such theory, but we are forced to the conclusion that these do not apply to the matters in controversy for the reason that the terms of the instrument and the practical construction given it by the parties render such application impossible (*Water Co. v. City of Beloit,* 91 Kan. 665, 139 Pac. 388; *Car-*

*lisle v. Business Association,* 104 Kan. 512, 516, 180 Pac. 280.)

Lastly, it is asserted that the contract was never approved by the public utilities commission of the state and is, therefore, void. The original ordinance granting the franchise to the Lawrence company granted the right to construct and maintain and operate a standard-gauge railroad "in, upon and along certain streets of the City of Lawrence." Express provision was made for use of its tracks for any interurban road which might construct a bridge across the river. This being true, it would seem that the public utilities commission had no jurisdiction, as the statute provides that such are to be controlled by the city commission. (Gen. Stat. 1915, § 8329; *Street Lighting Co. v. Utilities Commission,* 101 Kan. 438, 166 Pac. 514; *Street Lighting Co. v. Utilities Commission,* 101 Kan. 774, 169 Pac. 205; *City of Parsons v. Water Supply and Power Co.,* 104 Kan. 294, 300, 178 Pac. 438.)

On November 11, 1915, the state commission acted upon the application of the Lawrence company for permission to sell and transfer its properties and franchise to the plaintiff company, and the application of the latter to buy, and the commission found that—

"Permission and authority to sell and transfer such franchise, properties and plants, should be granted upon the conditions . . . herein set forth."

And it was ordered that such sale and transfer be permitted. Counsel for the defendant call this a blanket order—and it did include other companies—and ask if such permission was equal to the approval of the contract in question. It was certainly a permission if that body had any power to grant it, for the one company to buy out the other.

Counsel suggest that the conclusions reached by the trial court were not supported by the facts found, and exception is taken to certain statements in such conclusions. The result of such conclusions, however, without stopping to consider all the expressions found therein, is held to be correct and fully supported by the facts found, with which facts the defendant finds no fault. The alleged error in overruling the motion for new trial is included in what has already been said.

The decree is affirmed.

## OPINION ON REHEARING.

(Filed February 12, 1921.)

SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE—*Consideration for Contract.* There was ample consideration for the contract sued on, and there was no failure of any part of that consideration.

2. SAME—*Valid Contract Between Street Railway Company and Interurban Railroad Company.* A contract may be made between a street-railway company and an interurban railroad company by which the latter obtains the right to run its cars over the tracks of the former.

3. SAME—*Certain Property Included in Contract.* The tracks in the 500 and 600 blocks on Massachusetts street (from Seventh street north to the south end of the bridge across the Kansas river) in Lawrence, were not excluded from the operation of the contract between the Lawrence Railway & Light Company and the Kansas City, Kaw Valley & Western Railway Company.

4. SAME—*Contract Neither Ultra Vires nor Void.* The contract was neither *ultra vires* nor void.

5. SAME—*Parties to Contract Rightfully Occupying City Streets.* The streets of the city of Lawrence are occupied by the plaintiff and the defendant under ordinances authorized by statute and passed by the proper authorities of the city of Lawrence.

6. SAME—*Rights Under Contract Assignable.* The rights under the contract were assignable.

7. SAME—*Contract Need Not Have Been Approved by Public Utilities Commission.* It is not necessary to obtain the approval of the public utilities commission to a contract made by an interurban railroad company under the control of that commission, with a street-railway company not under the control of the commission, by which contract the interurban company acquires the right to run its cars over the tracks of the street-railway company, and does not modify, restrict, transfer, nor defeat any of the franchise rights of the interurban company.

The opinion of the court was delivered by

MARSHALL, J.: This is an appeal from a judgment directing the specific performance of a contract for the transfer of a part of an electric street railway. An opinion was filed June 5, 1920. (*Ante*, 285.) On the application of the defendant, a rehearing was granted, and the case has been again briefed and argued. The correctness of the statement of fact in the former opinion has not been challenged, and no additional

statement of facts is made except such as may be necessary to understand the conclusions reached by the court on the several propositions argued.

1. One of the propositions argued is that "the contract was void for want of consideration, because entered into under assumed conditions which did not in fact exist." The argument to support this proposition is based on the contention that the franchise giving to the Lawrence Railway & Light Company the right to build a street railway on Massachusetts street from Seventh (Winthrop) street to the south end of the Kansas river bridge, had expired at the time the contract between that company and the defendant (an interurban railroad company) was entered into. The ordinance giving the franchise to the Lawrence Railway & Light Company became effective April 13, 1909, and in section 1 provided:

"That consent, permission and authority be and are hereby given unto The Lawrence Railway and Light Company of Lawrence, Kansas, its successors and assigns . . . to locate, construct, maintain and operate, a single or double track, standard gauge electric railroad . . . . from the south end of the Kansas river bridge south on Massachusetts street to the city limits."

In section 14, the ordinance provided that—

"The grantee shall within fifteen days after the passage, approval and publication of this ordinance, file with the city clerk of said city, a written acceptance of the grant and franchise herein, and shall within one year after the filing of such acceptance, have ready for at least five (5) miles of its track on part of its route herein defined, and the remainder of said route within twenty (20) months from the granting of this franchise, unless delayed by strike, litigation or other unavoidable casualty or causes beyond its control."

That ordinance in section 19, further provided that—

"If at any time a bridge is constructed across the Kansas river, the grantee is given permission, so far as the city can legally grant such permission, to construct and operate its street railway over and across said bridge and on and along Locust street to Delaware street in North Lawrence."

On July 11, 1910, ordinance No. 585 was passed by the mayor and councilmen of the city of Lawrence. That ordinance contained the following:

"SECTION 2. That all parts or portions of Ordinance Number 413 of the said City of Lawrence, Kansas, imposing upon the said grantee any duty, liability or obligation to build, maintain or operate a line of street

railway in, upon, over and along Massachusetts Street, between Winthrop Street and the south end of the Kansas River bridge in said City, prior to the 12th day of December, 1912, be, and the same are hereby repealed."

The latter ordinance was passed when all parts of the franchise given by ordinance No. 413 were in force and effect, and left the Lawrence Railway & Light Company with the franchise to build a street railway on that part of Massachusetts street at any time that a bridge might be constructed across the Kansas river, if within the life of the franchise.

In the brief of the defendant on the rehearing is found this language, "each party assumed separate obligations beneficial to both." There were many provisions in the contract between the Lawrence Railway & Light Company and the defendant, by which each promised certain things for the benefit of the other. These covenants were at least a part of the consideration from each to the other for the contract in controversy. The right which the Lawrence Railway & Light Company gave to the defendant to construct a railroad on Massachusetts street from Seventh street to the south end of the Kansas river bridge, was then valid and subsisting and was a part of the consideration for the contract. There was no failure of any part of the consideration.

2. Another contention is that "the power given to a city by statute to grant rights, privileges and franchises cannot be delegated." The legal principle stated is correct, but the fault in the contention is that there was no delegation of any power to grant franchises, and no such power was attempted to be exercised by the Lawrence Railway & Light Company in making the contract with the defendant. The Lawrence Railway & Light Company had a franchise to build and operate a street railway in Lawrence, and did not deprive itself of the right to operate that street-railway system by the contract. The contract provided for the construction of a part of the railway by the defendant and for its operation by the Lawrence Company, and provided means by which the Lawrence Company might do the things that the franchise gave it the right to do. Part of the contract reads as follows:

"It is further agreed that in the event The Lawrence Company shall at any time desire to use any of such tracks so constructed by The Interurban Company without purchasing the same, The Lawrence Company

shall have the option and privilege of using any of such tracks for its local traffic during the full term of this agreement or any renewals thereof, and also of using the overhead of The Interurban Company for the purpose of attaching its trolley and feed wires upon the following terms and conditions."

Under this provision of the contract, the Lawrence Railway & Light Company retained the right to run its cars over any track that might be built by the defendant. This would fulfill its franchise obligation.

3. It is argued that "the tracks in the 500 and 600 blocks in Massachusetts street [from Seventh street north to the south end of the Kansas river bridge] are expressly excluded from the operation of the contract sued on." This argument is based on the following language contained in the contract:

"The said Lawrence Company does not guarantee the right to The Interurban Company to operate its cars over the tracks of The Lawrence Company in the City of Lawrence, but grants to the Interurban Company only such rights as The Lawrence Company may have, and no more."

To support this argument, the defendant contends that the franchise to build that part of a street railway had expired, and that therefore the language quoted excludes that part of Massachusetts street from the operation of the contract. It has been seen that the franchise had not expired as to that part of Massachusetts street, and this argument must fail.

4. Another contention is that "the contract sued on is *ultra vires* and void." To support this contention, defendant argues that the Lawrence Railway & Light Company was not authorized by ordinance No. 413 to enter into such a contract; that it was in violation of the law of this state; and that it was in excess of the corporate powers of the Lawrence company. An examination of the argument shows that the proposition contended for is that the Lawrence Company by the contract undertook to split its franchise and assign to the defendant a part of it and retain the remainder. By the contract, the Lawrence Company did not attempt to transfer or abandon any part of its franchise or to split it, but did provide means by which all of the franchise rights could be carried into execution. Such statute as we have on this subject authorizes railroads to lease the property of other railroads. (Gen. Stat. 1915, § 8594.) Of course, if both railroads are under the con-

trol of the public utilities commission, the lease must be approved by that commission. (Gen. Stat. 1915, § 8364.)  Also, if one railroad under the control of the commission gives rights to another in a road then owned or operated by the former, the contract must be so approved.

5. The defendant insists that "the occupation of a public street by a railway company, in any other manner than that prescribed by statute is a nuisance *per se.*"  No fault can be found with the legal principle stated, but the principle does not apply for the reason that the street is occupied under ordinances authorized by statute and passed by the proper authorities of the city of Lawrence.  The basis of this argument is principally the contention that the franchise rights on Massachusetts street had expired.

6. Another contention is that "the contract sued on was not assignable without appellant's consent, and cannot be enforced by appellee."  The contract was made by the Lawrence Railway & Light Company and the defendant.  The Lawrence company assigned its franchise rights including its rights under this contract to the plaintiff.  The defendant argues that "it appears from the terms of the instrument itself that it calls for the performance of an obligation personal in its nature, such as carrying with its performance the element of credit."  The rule of law contended for by the defendant is well established and cannot be refuted, but the court is unable to see where there is any obligation of a personal nature going from either of these contracting parties to the other.  Each is a corporation; each operates through officers and employees that are constantly changing; each gives rights to and in the other's property; and in certain instances, there are promises for the payment of money.

The franchise granted to the Lawrence Railway & Light Company was granted to that company, "its successors and assigns."  The ordinance granting that franchise, and its terms, were known to and understood by both parties to the contract.  With that ordinance before them, the parties stipulated that—

"It is understood and agreed that the terms, agreements and conditions of this contract shall be binding upon and shall be construed in favor of the successors and assigns of each of the parties hereto; pro-

vided, nothing herein contained shall authorize the Interurban Company to run or operate over the tracks of the Lawrence Company, any cars other than those run or operated by itself, its successors and assigns, for the transaction of its or their own business."

It was intended that the rights and obligations conferred by that contract might be transferred to other persons or corporations; else, why say that the contract should be binding on their successors and assigns. The defendant gave its consent to the assignment of the rights conferred by the contract when it was signed. The franchise subsequently granted by the city of Lawrence to the defendant was to "its successors and assigns." It must be held that the rights and obligations under the contract were assignable.

7. It is argued that the contract between the Lawrence Railway & Light Company and the defendant was never approved by the public utilities commission and is therefore invalid and nonenforcible. The contract was not approved by the public utilities commission. The order of the commission approving the purchase of the Lawrence Railway & Light Company franchise and properties by the plaintiff, did not apply to the contract between the Lawrence Railway & Light Company and the defendant. The defendant was under the control of the public utilities commission. The Lawrence Railway & Light Company was not.

Section 8364 of the General Statutes of 1915, reads:

"No franchise granted to a common carrier or public utility governed by the provisions of this act shall be assigned, transferred or leased, nor shall any contract or agreement with reference to or affecting such franchise or right thereunder be valid or of any force or effect whatsoever, unless the assignment, transfer, lease, contract or agreement shall have been approved by the commission."

The contract did not transfer or lease any part of the franchise of the defendant, and did not refer to nor affect that franchise, nor any right thereunder within the meaning of the statute. One of the franchise rights of the interurban company was evidently to build a line of railroad into Lawrence; it had power to purchase property to carry into effect that franchise and to make contracts therefor without the approval of the public utilities commission. The property that might be thus contracted for included rails, ties, cars, right of way, and might well include rights in tracks already laid. The de-

fendant could contract to pay for these things. The statute does not prohibit the defendant from leasing other railroad tracks, other railroads, nor from purchasing any other company's franchise, without the consent of the commission, if the other railroad or company is not under the control of the commission. This contract carries into effect the defendant's franchise and does not assign, transfer, or lease it, nor any part of it, nor refer to or affect it, nor modify, restrict, or defeat its operation. By the contract the defendant acquired rights it did not have prior thereto and did not give any it then had.

The conclusion reached in the former opinion is adhered to, and the judgment is again affirmed.

PORTER, J. (dissenting) : I dissent from the seventh paragraph of the syllabus and the corresponding part of the opinion. Paragraph 7 of the syllabus reads:

"It is not necessary to obtain the approval of the public utilities commission to a contract made by an interurban railroad company under the control of that commission, with a street-railway company not under the control of the commission, by which contract the interurban company acquires the right to run its cars over the tracks of the street-railway company, and does not modify, restrict, transfer, nor defeat any of the franchise rights of the interurban company."

The statement of law in this section of the syllabus is based upon a misconception of the facts in the case. The interurban company did not by the contract in question acquire "the right to run its cars over the tracks of the street-railway company." So if that statement be stricken from the syllabus the latter goes no further than to express as a statement of law that it is not necessary to obtain the approval of the public utilities commission to a contract made by an interurban railway company under the control of the commission with a street-railway company not under the control of the commission which *does not modify, restrict, transfer, nor defeat any of the franchise rights of the interurban company.*"

There is no room for any dispute about the facts. The interurban company has never operated its cars over any tracks belonging to the street-railway company. It entered the city of Lawrence five years ago on tracks constructed by it on Locust street in North Lawrence for a distance of about one

mile to the north end of the Kaw river bridge, thence across the bridge on tracks belonging to Douglas county, and from the south end of the bridge it built its own tracks for a distance of about a block and three-quarters on Massachusetts street where its tracks turn to the east side of the street and enter the terminal station of the interurban company. The nearest it approaches any tracks of the street-railway company in the operation of its cars is probably 150 feet. The interurban company obtained a franchise from the city of Lawrence for the construction of its tracks in the streets of Lawrence and the operation of its cars over such tracks. One of the rights obtained by the franchise was the right to charge and collect, and retain in full all earnings for freight, passenger and express charges in the operation of its cars over its own tracks into and out of its terminal station. But the contract which is involved in this case bound the interurban company not only to obtain the franchise and to build its road on the streets, but also bound it to convey to the Lawrence railway company on demand any portion of those tracks constructed by it upon payment to it of the actual cost of construction of such portion of its tracks; and thereafter such tracks would belong to the street-railway company, and the interurban company should pay for the use of any portion of the tracks so purchased two and one-half cents for each full-fare passenger and one and one-quarter cents for each half-fare passenger carried by the interurban company one way in either direction upon any part of the tracks so purchased, and twenty-five cents per car mile for each mile or fraction of a mile traveled by freight, express or baggage cars of defendant over such purchased tracks. The Lawrence railway company sought to exercise this privilege and demanded the right to purchase a small portion of defendant's tracks, to wit: the tracks from the south end of the Kaw river bridge to the terminal station of the interurban company, covering a distance of about 800 feet. It tendered the appraised cost, $4,839.14, and demanded a conveyance of so much of defendant's tracks. Upon defendant's refusal to make a conveyance, this suit was brought to compel specific performance. The trial court ordered defendant to perform the contract and retained jurisdiction of a cause of action to be heard later in

Utilities Co. v. Railway Co.

order to determine the amount due from defendant to the street-railway company and its successors for all passengers and freight carried by defendant over the 800 feet of track from the time the demand for the conveyance was refused. It is asserted that the sum claimed to be due at the time the case was tried, two years ago, amounted to something like $15,000. Inasmuch as the majority opinion makes no mention of these facts, which are the essential facts over which the controversy arises, it is deemed necessary to state them here.

The interurban company claims that it is a hard, unconscionable bargain which permits the street-railway company without ever having given or furnished anything to the defendant of value to have the right to select the most necessary portion of the tracks belonging to the defendant (the tracks by which defendant enters and leaves defendant's terminal station and over which all of its business in and out of the city, passenger, freight and express, is carried), and then demand upon the payment of the initial cost of the construction of this small portion of the track the right to receive such a disproportionate and excessive amount of defendant's earnings.

It has never been doubted that the word "franchise" includes the right to make profit and gain by the performance of the duty to the public which the holder of the franchise undertakes to do. Stated in another way, the defendant cannot operate its cars in and out of the city of Lawrence without using its terminal station, and for the mere privilege of operating its cars over 800 feet of track it must, for the life of the franchise, by virtue of this contract and judgment of the court, be compelled to surrender every month thousands of dollars of its earnings. It is well-settled law that the holder of such a franchise has no right, without legislative consent, to sell or mortgage its property so as to impair in any substantial degree its ability to perform its public service. This contract is not only a contract "with reference to." but is one "affecting such franchise or right thereunder" and comes within the express inhibition of the statute which declares as follows:

"Nor shall any contract or agreement with reference to or affecting such franchise or right thereunder be valid or of any force or effect

whatsoever, unless the assignment, transfer, lease, contract or agreement shall have been approved by the commission." (Gen. Stat. 1915, § 8364.)

The only question for us to determine is, whether this contract is "with reference to" a franchise obtained by a public utility corporation under the control of the public utilities board or, whether it is a contract "affecting such franchise or right thereunder." The right to collect its fares and earnings is a valuable right granted by the franchise. This contract directly affects not only freight and passenger service, but the rates to be charged for such service, and is of vital consequence to the defendant in the exercise of its franchise rights because its ability to earn affects its ability to properly serve the public.

The legislature did not say in the enactment of this statute that the contract in order to require the approval of the public utilities commission must be one which modifies, restricts, transfers or defeats the franchise right. The language is, no "contract or agreement with reference to or affecting such franchise or right thereunder."

In the case of *Attorney General v. Haverhill Gas Light Co.*, 215 Mass. 394, the Massachusetts court in construing the effect of a statute forbidding the transfer of a gas company's franchise without legislative authority, found it necessary to determine the meaning of "franchise" as employed in the statute. In the opinion it was said:

"Its definition depends upon the connection in which it occurs and the property and corporation to which it is applied. It may have different significations. The power to exist as a corporation with the special privileges and immunities personal to the particular organization is a franchise. This in its nature is not transmissible. The legislature could not have used the word in this sense in the statute. As applied to a gas company, "franchise" means the right to manufacture and supply gas for a particular locality and to exercise the special rights and privileges in the streets and elsewhere which are essential to the proper performance of its public duty and the gain of its private emoluments and without which it could not exist successfully. *Memphis & Little Rock Railroad v. Railroad Commissioners*, 112 U. S. 609, 619. *Vicksburg v. Vicksburg Waterworks Co.*, 202 U. S. 453, 464." (p. 399.)

Our statute is much stronger than the one before the Massachusetts court. It goes further than to merely forbid the assignment of a franchise of a public utility company; it declares

Utilities Co. v. Railway Co.

in language leaving scant room, indeed, for any construction of the courts, "nor shall any contract or agreement with reference to or affecting such franchise or right thereunder be valid or of any force or effect whatsoever, unless the assignment, transfer, lease, contract or agreement shall have been approved by the commission." (Gen. Stat. 1915, § 8364.) If the court can arbitrarily say that a contract of this kind is not a contract with reference to a franchise, or is not one affecting a right thereunder, it will be difficult to conceive of a contract which it could be said the legislature had in mind when the statute was enacted.

The paramount purpose of the enactment of the public utilities law was the protection and enforcement of the rights of the public. Here a controlled public utility has been granted valuable franchise rights to enable it to serve the public, and the legislature has seen fit to provide that having obtained a franchise for the operation of its road, it could not make a contract affecting any right acquired under its franchise without obtaining the approval of the board of public utilities. The contract here is one not only "with reference to" but which very materially affects the rights acquired under the franchise by the interurban company to be paid its full compensation and earnings for the carrying of its passengers, freight, baggage and express in and out of the city of Lawrence. It is a contract peculiarly affecting charges for freight and passenger service and is of the most vital consequences to the defendant in the exercise of its franchise rights.

I am authorized to say that Mr. Justice Burch concurs in this dissent.