## Brooks v. Louisville & Nashville Railroad Company.

(Decided February 15, 1927.)

Appeal from Warren Circuit Court.

Master and Servant—Railroad Employe Held Not Entitled to Pay as Hostler's Helper Rather Than Shop Laborer.—Where railroad and employe had for period of three years regarded employe's duties as those of a shop laborer, held, as matter of law, in view of parties' construction, that employe was not entitled to recover pay as a hostler's helper.

GARDNER & DENTON for appellant.

RODES & HARLIN and WOODWARD, WARFIELD & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS— Affirming.

In this action the appellant sued to recover the difference between the wages of a hostler's helper and that of a shop laborer for a period extending from September, 1922, until June, 1925, during which time he was engaged in and around the company's roundhouse, yard and switches at Bowling Green, Kentucky. At the conclusion of all the evidence a directed verdict was rendered for the defendant, hence this appeal.

It appears in evidence that the Locomotive Enginers', Firemen's and Hostlers' Union have an agreed wage scale with the L. & N. R. R. Co., by which prior to April 1; 1924, they were paid as follows: (a) Inside host-

lers, $4.23 per day; outside hostlers, $4.80 per day; help-
ers, $3.60 per day. Subsequent to April 1, 1924, the
wages were: Inside hostlers, $5.28 per day; outside host-
lers, $5.92 per day; helpers, $4.72 per day. It is also
provided in such agreement (b) that the term "helper"
applies to employment used to assist an outside hostler;
(d) hostlers whose movements are limited to roundhouse,
shop, yard and engine tracks will be classed as inside
hostlers; (e) hostlers required to make main line move-
ments handling locomotives between engine house and
passenger station or between engine house and yards,
between different points in the yard or yards outside of
shop and roundhouse or engine tracks will be classified
as outside hostlers.

Appellant had never joined the union of locomotive
engineers, firemen and hostlers but belonged to the
laborers' union. Prior to the year 1922 he had been in
the employment of the company for about fifteen years as
laborer. In the summer of that year he went on a strike
but was reemployed in September. Nothing was said
about his classification. At Bowling Green the "shop
yards" embrace the "roundhouse," a "square house"
and a number of switches embraced within the angles of
a "Y," and practically all of the duties which appellant
discharged were performed within that space; according
to his evidence he threw switches, filled the engine tank
with water; cooled and sanded the engines; kept up steam
and spotted coal cars to be unloaded, practically all of
this work being performed in assisting the hostlers
*within* the yards and for which the helper was paid the
wages of an ordinary laborer, the wages of a hostler's
helper being limited by rules C and D to assistants of
outside helpers. However, occasionally he would go out
to the main line and assist in bringing in passenger
engines where there was a double header, and perhaps
did some other work as an outside helper, but these occa-
sions were rare, as there were regular employes detailed
for this work. As the yards were small the same
hostlers acted both inside and outside the yard and he
introduced considerable proof to the effect that he as-
sisted outside hostlers, but when analysed it appears
that except in the instances named it was in doing
inside work. He says that he made out a card each
pay day as "hostlers' helper," but that he did not know
the difference in the wages of such helper and that of a

day laborer, and that he was paid and accepted continuously the sum of $2.46 a day, it being the pay of a day laborer. Two other hands worked in the yard with him at the same labor and received the same compensation, no objection being raised to this by anyone until shortly before he stopped work.

It is strongly urged by the appellee that as the appellant did not belong to the hostlers' union any agreement between the union and itself did not bind appellant and was unenforceable for want of mutuality. It is also urged that in accepting laborers' wages without objection under the terms of a contract that he himself made with the company, he waived any right to demand higher wages and is thereby estopped from claiming such.

On the other hand, appellant insists that he knew that he was doing the work of a hostler's helper but was in entire ignorance of the fact that such employees drew higher wages than ordinary laborers; that he could not waive something of which he was in ignorance, and that as he performed services as a hostler's helper he was entitled to the compensation received by such employes; that as he introduced some evidence to show that he was engaged as an outside helper, the court erred in taking the case from the jury.

We do not deem it necessary to consider the question of estoppel or of appellant's right to claim the benefits of a wage scale made on behalf of a union to which he did not belong. Because the parties themselves have during a period of three years construed their own contract and appellant's classification, as meaning that his services were those of a shop laborer and entitled him to pay as such. According to his own evidence practically all of his labor was confined to that branch of the service, he continued as a member of the laborers' union, and he and his associates engaged in the same service, continuously received laborers' wages without objection, and his only claim to a different classification arises from the fact that on a few occasions he assisted hostlers in service outside the yards, but these occasions were so sporadic and insignificant as compared with his general line of service that the parties evidently thought them insufficient to affect his classification, as it is clear they did not.

Wherefore, the judgment is affirmed.