No. 33,771

H. E. Hurt, *Appellee*, v. W. F. Edgell, and H. L. Edgell, a Copartnership, doing business as W. F. Edgell and Son, and The United States Fidelity and Guaranty Company of Baltimore, Maryland, *Appellants.*

(75 P. 2d 834)

Opin-

ion filed January 29, 1938.

*Aubrey Neale,* of Coffeyville, for the appellants.

*A. R. Lamb* and *Clement A. Reed,* both of Coffeyville, for the appellee.

The opinion of the court was delivered by

Allen, J.: This is an action by a laborer against a contractor and his bondsmen for wages and for the penalty provided for in G. S. 1935, 44-308. The amended petition was attacked by a motion to make more definite and certain and to separately state and number the causes of action. This motion was overruled in part and sustained in part. The defendant then lodged a demurrer to plaintiff's petition. This appeal is from the order of the trial court overruling the demurrer.

The plaintiff, for his first cause of action, alleged:

"That he is a resident of and his true and correct post-office address is 809 W. Tenth street, Coffeyville, Kan.; that the defendants, W. F. Edgell and H. L. Edgell, are a copartnership doing business under the firm name and style of W. F. Edgell and Son; that the United States Fidelity and Guaranty

Company of Baltimore, Md., is a corporation, duly authorized to transact business in the state of Kansas and is engaged in the business of acting as surety for hire.

"That prior to the 21st day of April, 1936, the city of Coffeyville contemplated the construction of a sewage pump station and sewage treatment plant, and for the purpose of securing bids for the construction of the same had plans, specifications, and instructions to bidders prepared and distributed to contractors, including the defendants, W. F. Edgell and Son, for the purpose of having said contractors submit bids for the construction of the same; that for the purpose of setting a minimum wage scale and for the purpose of requiring the contractor constructing said plant to pay the minimum wages as therein set out, the plans, specifications and instructions to bidders contained the following:

" 'SCHEDULE OF MINIMUM HOURLY WAGE RATES

" 'The following schedule of minimum hourly wage rates has been adopted by the city of Coffeyville for the work included in this contract, and the schedule has been approved by the acting state director of the public works administration. The contractor shall pay not less than the wages set out in the schedule below:

Unskilled labor.......................................... $0.50
Skilled labor.............................................  1.20
Pump ....................................................   .60
Watchman, up to 27 hrs. per week, $0.50; $13.50 per week from 27 hrs. up to 40 hrs.'

"That the defendants, W. F. Edgell and Son, submitted a proposal to the city of Coffeyville, wherein said defendants agreed in writing, 'To pay the schedule of wages as set out in the instructions to bidders.' That the proposal of the defendants, W. F. Edgell and Son, to construct said plant for the sum of one hundred twenty-eight thousand three hundred forty ($128,340) dollars was accepted by the city of Coffeyville and on the 21st day of April, 1936, the city of Coffeyville and W. F. Edgell and Son entered into a written contract, which contract contained the following provisions: 'The scale of minimum wages as set out in instructions to bidders shall be observed under this contract.' That immediately thereafter the defendants, W. F. Edgell and Son, commenced the construction of said plant under said contract.

"That plaintiff attaches hereto and makes a part of this petition as exhibit 'A,' extracts from the information and instructions to bidders, proposal, general contract and stipulations and construction regulations, under which said plant was constructed by the defendants, W. F. Edgell and Son.

"That on the 13th day of July, 1936, the plaintiff was employed by H. L. Edgell as a night watchman at a wage of eighteen dollars ($18) per week for forty (40) hours labor each week; that while the plaintiff was designated as a watchman and was carried on the books of the defendants, W. F. Edgell and Son, as a night watchman, he was during all of the time he was in the employ of the defendants, W. F. Edgell and Son, required to and did perform the duties of a pumper in that he was required to service and operate the pumps that were used by the defendants, W. F. Edgell and Son, in constructing the said plant; that plaintiff worked for said defendants, W. F. Edgell and Son, from the 13th day of July, 1936, to January 16, 1937, on which last mentioned date he was discharged by the defendants, W. F. Edgell and Son, two thousand two

hundred and sixty-eight (2,268) hours and fifty-five (55) minutes as shown by the itemized statement hereto attached and marked exhibit 'B' and made a part hereof, for which services plaintiff was entitled to receive pay at a rate of sixty (60) cents per hour as a pumper, or one thousand three hundred sixty-one dollars and thirty-five cents ($1,361.35) all as set out in the written contract between the defendants, W. F. Edgell and Son, and the city of Coffeyville; that the defendants, W. F. Edgell and Son, paid to the plaintiff the sum of only four hundred eighty-one dollars and fifty cents ($481.50), leaving a balance due plaintiff of eight hundred seventy-nine dollars and eighty-five cents ($879.85), which sum is long past due and wholly unpaid.

"Plaintiff alleges that the contract entered into between the defendants, W. F. Edgell and Son, and the city of Coffeyville, wherein the defendants, W. F. Edgell and Son, agreed to pay sixty (60) cents per hour for pumpers was made for the benefit of this plaintiff and other laborers working for said defendants in the construction of said plant; that when plaintiff was required by said defendants, W. F. Edgell and Son, to perform the duties of a pumper that he was and is entitled to the wage set out in said contract notwithstanding the fact that the said defendants carried him on the books as a night watchman.

"Plaintiff further alleges that on the 2d day of June, 1936, the defendants, W. F. Edgell and Son, as principal, and the United States Fidelity and Guaranty Company of Baltimore, as surety, executed and delivered to the clerk of the district court of Montgomery county, Kansas, a statutory bond as provided by the laws of the state of Kansas for the purpose of providing for the payment of all claims which might be the basis of liens upon the plant being constructed by said defendants, W. F. Edgell and Son; a true and correct copy of said bond is hereto attached, marked exhibit 'C' and made a part hereof. That the terms of said bond have been broken in that the defendant, W. F. Edgell and Son, has failed, neglected and refused to pay to plaintiff the wages due him as above set out and by reason thereof the defendant, the United States Fidelity and Guaranty Company of Baltimore, Md., is indebted to the plaintiff in the sum of eight hundred seventy-nine dollars and eighty-five cents ($879.85), together with interest thereon at six (6) percent per annum as set out in the prayer of this petition."

The second count alleged that plaintiff was discharged by the defendant contractors; that his wages were not paid; that plaintiff is entitled to recover wages at the "same rate as if he was still in defendant's service for a period of sixty (60) days as a penalty as provided by section 44-308, R. S. 1935."

Did the petition state a cause of action?

In *Sheets v. Eales,* 135 Kan. 627, 11 P. 2d 1020, it was stated there is a presumption of law that all services rendered by an employee during the period for which he is employed, of a nature similar to those required of him in the course of his regular duties, are paid for by his salary, and to overcome this presumption he must show an

express agreement for extra compensation. In that case the plaintiff agreed to assist the defendant in carrying on the business of selling tires, tubes and gasoline, and of general tire repairing for a compensation of one fourth of the "net profits" (to be figured after the payment of all expenses, which included the purchase price of tools, fixtures, machinery, etc.), plaintiff to have no interest in the business itself, or in the tools and equipment. It was further agreed that the employee would devote his entire time, skill, labor and attention, and devote his time to the business from 7 o'clock a. m. until closing time, which was to be regulated by the requirements of the business, usually being about 10 o'clock p. m., and that the employee should have time off every other evening and every other Sunday. Plaintiff was to have a drawing account of $25 per week in anticipation of profits, and it was further provided that either party might terminate the service by ten days' notice in writing. After working under this contract for about three years, until the business was sold, plaintiff claimed additional compensation for work on 148 extra evenings and 18 extra Sundays during the period. It was alleged that on various occasions, when plaintiff told defendant he would have to have more money, defendant replied with such expressions as, "Don't worry, I will take care of you"; "Let it slide, and I will pay you a bonus at the end of the year that will make as much money"; and "We will agree on a settlement of the extra time which will be absolutely satisfactory." In holding that plaintiff was not entitled to additional compensation the court referred to these vague expressions, and said:

"But no agreement was ever entered into that any particular sum should be paid for any extra services that might have been rendered. He continued to work under the written contract, and it . . . did not stipulate that payment would be made for any extra services." (p. 630.)

The court further pointed out that the extra work was of the same character as that which plaintiff was employed to do under the contract; moreover, that plaintiff was interested in the sales and in the repair work, and that the time, skill and energy devoted to the business would inure to the benefit of both plaintiff and defendant.

In holding that the plaintiff was not entitled to recover, the court cited *Guthrie v. Merrill*, 4 Kan. 187, and *Weaver v. Skinner*, 103 Kan. 97, 172 Pac. 1024. In the former case the syllabus reads:

"Where plaintiff agreed to work for a stipulated price per month, the contract being silent as to extra services, . . . in the absence of other proof, all extra work done on Sundays will be deemed to have been performed under the contract."

In *Kelsey v. Puckett,* 198 Ia. 839, 200 N. W. 421, it was stated that "There is a presumption in law that all services rendered by an employee during the period for which he is employed, of a nature similar to those required in the course of his regular duties, are compensated under the stipulated agreement." (p. 842.)

In *Brooks v. L. N. R. Co.,* 218 Ky. 279, 291 S. W. 371, it was held that when the plaintiff was employed as a laborer and for a period of three years had received, without objection, wages as a laborer, he could not recover the difference between the wages of the laborer and those of an outside hostler's helper because on certain occasions he had assisted in such outside work.

In *Thibault v. National Tea Co.,* 198 Minn. 246, 269 N. W. 466, 107 A. L. R. 702, it was said:

"In this instance plaintiff was employed in a certain capacity, not by the hour or by the day, but by the week, on a weekly salary or wage. He was paid the sum agreed upon at the end of each week and receipted in full for a week's work. It is not reasonable to construe this statute so as to give a workman a cause of action for overtime when his agreed compensation for the full period has been received. Every moment of his work was spent under the single contract of employment for a stipulated price for the whole week. Under similar facts, recovery for overtime by virtue of statutes fixing the duration of a standard working day has been denied. (*Luske v. Hotchkiss,* 37 Conn. 219, 9 Am. R. 314; *Grisell v. Noel Brothers F. F. Co.,* 9 Ind. App. 251, 36 N. E. 452; *Bachelor v. Bickford,* 62 Me. 526; *McCarthy v. Mayor of City of New York,* 96 N. Y. 1, 48 Am. R. 601; *Vogt v. City of Milwaukee,* 99 Wis. 258, 74 N. W. 789; *United States v. Martin,* 94 U. S. 400, 24 L. Ed. 128; *Plummer v. Pennsylvania R. Co.* (C. C. A.) 37 F. (2d) 874." (p. 248.)

In *Robinette v. Coal Mining Co.,* 1921, 88 W. Va. 514, 107 S. E. 285, 25 A. L. R. 212, the plaintiff had been employed to superintend the defendant's power plant. He was to work eight and one half hours per day, but worked twelve hours each day from the beginning. The action was to recover for this overtime which he had been compelled to work from the first day of his employment. The court held that he could not recover. In the opinion the court stated:

"Where an employee voluntarily continues in a position under such conditions, known to him from the first day he undertook the work, receives the compensation agreed upon as a monthly salary, wholly fails to insist upon a definite understanding with regard to additional remuneration for such overtime, and protests but weakly against it, he will be deemed to have treated such overtime work as a mere incident of his usual duties, and to have waived any right to demand additional remuneration therefor. To hold otherwise would tend to throw the doors wide open to fraud and perjury on the part of discharged and disgruntled employees, who, by making out a prima facie case

of an original contract providing for fewer hours than those voluntarily accepted, might induce a jury to mulct their former employers in damages for alleged overtime work. In so holding we are not seeking to throw all the burden and risk of the terms of employment upon employees. They can easily protect themselves by insisting upon a definite agreement with regard to such overtime on the occasion when it is proposed or demanded. By a special agreement entered into or understanding had with the employer at the time of his request for such work the employee can amply safeguard himself. In that way justice and fairness can be done to both parties and each will be protected against the other." (p. 522.)

In the case before us the petition states that plaintiff was employed as a night watchman and was carried on the books as a night watchman, and that he was paid the wages due him as a watchman. While plaintiff worked from July 13, 1936, until January 16, 1937, it does not appear that he claimed or demanded the wages due as a pumper. Under the PWA constructions regulations made a part of the contract it was provided that "Unless otherwise provided by law, claims or disputes pertaining to the classification of labor under this contract shall be decided by the owner, subject to the right of final review by the state director, whose decision shall be binding on all parties concerned." It is not asserted that there was any dispute as to the classification of labor under the contract. By accepting his regular wages weekly as a night watchman and by failing to make any protest or complaint as to the wages due him for the work performed, the plaintiff waived his right, if any, to additional pay under another classification paying a higher wage.

Plaintiff's second cause of action is bottomed on G. S. 1935, 44-307 and 44-308. The petition alleges he was discharged by defendants on January 13, 1937; that at the time he was discharged he was entitled to payment of his wages in full as a pumper, which defendants neglected and refused to pay; that by reason thereof plaintiff is entitled to recover wages for a period of sixty days at the same rate, as a penalty under G. S. 1935, 44-308. Our statute G. S. 1935, 44-307, provides:

"It shall be unlawful for any firm or corporation employing labor within this state, to refuse or neglect to pay to any person leaving its service either by resignation or discharge, any money due as wages within ten days from the termination of such services, and such payment must be made either at the place of discharge or at any office of such company or corporation within the state, as may be designated by the party employed, he giving notice in writing, to the foreman or party in charge of such work."

It will be noted that the statute requires that a written notice and demand be made by the employee who has been discharged, stating

where he wishes to have his wages paid, which he claims are due him. This appears to be a reasonable provision. Without such a requirement an employee could wait for a period of sixty days after his discharge, as appears to have been done in this case, and then bring suit to recover the penalty. Then for the first time the employer would have notice that the employee was seeking to invoke the penalty and the employer would not have an opportunity to comply with the statute and evade the penalty. It is not alleged that the provision of the statute as to notice was complied with. We think a failure to comply with the positive provisions of the statute bars the claim of plaintiff as to the penalty.

For the reasons stated, the petition fails to state a cause of action, and defendants' demurrer should have been sustained.

The judgment is reversed.

ALLEN, J. (dissenting): The petition alleged that plaintiff was employed by the defendants as a night watchman, "that while the plaintiff was designated as a watchman and was carried upon the books of the defendants, W. F. Edgell and Son, as a night watchman, he was during all of the time he was in the employ of the defendants, W. F. Edgell and Son, required to and did perform the duties of a pumper in that he was required to service and operate the pumps that were used by the defendants, W. F. Edgell and Son, in constructing the said plant."

The demurrer admits the truth of these allegations.

In the proposal for bidders the defendants had notice of the classification of the labor to be employed, of the maximum hours of work under each classification, and of the minimum wage rates. The proposal was formally accepted in writing by the defendants, and thereafter incorporated in the written contract.

The petition alleged that plaintiff, during all the time he was in the employ of the defendants, performed the duties of a pumper. If this is true, then he is entitled to the compensation provided in the schedule for work of that classification. It would seem to be a question of fact for the jury to determine whether the plaintiff worked as a watchman or as a pumper.

The cases cited by the court deal with cases where the claimant performed additional work incidental to or within the scope of his employment. They do not appear to govern the case here presented. We are dealing with a PWA project, the very purpose of which was

to promote recovery from the depression. This was to be accomplished by giving work to the unemployed, and by providing maximum hours of labor and a minimum wage scale. To say that the plaintiff, by accepting his weekly wage, has waived his right to recover for the class of work actually performed, utterly destroys the purpose of contract. So construed, the contract between the city and the contractor, so carefully formulated, was a useless formality —a mere idle ceremony, signifying nothing. It would permit the contractor to do indirectly what he could not do directly. The inequality in the footing of the parties must be borne in mind. The contractor and the laborer do not stand upon an equality. The former naturally desires to obtain as much labor as possible at the lowest wage, while the latter, induced by the fear of discharge, will conform to regulations which his judgment, fairly exercised, would pronounce detrimental to his best interests.

Long ago it was stated by an English chancellor that " . . . necessitous men are not, truly speaking, free men, but to answer a present exigency will submit to any terms that the crafty may impose upon them." (*Vernon v. Bethell,* 2 Eden, 110, 113 [1762].) Compare *Holden v. Hardy,* 169 U. S. 366, 18 S. Ct. 383, 42 L. Ed. 780; *West Coast Hotel Co. v. Parrish,* 300 U. S. 379, 57 S. Ct. 578, 81 L. Ed. 703.

I think the first count of the petition stated a cause of action.

As to the sufficiency of the second cause of action, attention is called to our statute G. S. 1935, 60-743, which provides:

"In pleading the performance of conditions precedent in a contract, it shall be sufficient to state that the party duly performed all the conditions on his part; and if such allegations be controverted, the party pleading must establish, on the trial, the facts showing such performance."

It would seem that compliance with the statute was sufficiently pleaded.