No. 33,944

WILLIAM M. BREWER, *Appellee* and *Cross-appellant,* v. THE KANSAS ELECTRIC POWER COMPANY, *Appellant.*

(83 P. 2d 103)

Opinion filed October 8, 1938.

*R. F. Rice,* of Lawrence, and *O. R. Stiles,* of Emporia, for the appellant.

*C. C. McCullough,* of Emporia, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by an employee against a corporation to recover, under the first count, wages alleged to be due him, and under the second count, a penalty for failure to pay the same under the provisions of G. S. 1935, 44-301 and 44-302. The trial

court overruled the demurrer of the defendant, The Kansas Electric Power Company, to plaintiff's evidence on the first count and sustained its demurrer to the evidence on the second count. The defendant introduced its evidence and the trial court made findings of fact and conclusions of law. Judgment went for the plaintiff on the first count and against him on the second count. From the judgment and from the order overruling its motion for a new trial defendant appealed. Plaintiff cross-appealed only from the order sustaining defendant's demurrer to his evidence on the second count.

We shall first consider errors urged by the defendant. The pertinent facts found by the trial court were:

"1. The court finds that on and prior to July 13, 1937, the defendant, The Kansas Electric Power Company, a corporation, was operating and maintaining in the city of Emporia, Kan., a system of motor-bus transportation under and by virtue of a valid franchise granted to said company by the city of Emporia, and an ordinance relating thereto, introduced in evidence, by stipulation of the parties, as plaintiff's exhibit 'A.'

"2. The court further finds that on July 13, 1937, the defendant entered into a written contract with Elmer Z. Reeves and Ernest Callison, of Winfield, Kan., whereby for a valuable consideration, the defendant assigned and contracted to the said Reeves and Callison, aforesaid, the operation of motor buses for the transportation of passengers in the city of Emporia, Kan., for a term of five years, and thereby delegated for said period of time to the said Reeves and Callison the work of operating said transportation system required to be maintained and operated by the defendant under the franchise and ordinance heretofore referred to.

"3. The court further finds that pursuant to said contract the said Reeves and Callison took over the operation of said buses and transportation system in the city of Emporia, and between the first day of September, 1937, and the 14th day of October, 1937, inclusive, were operating and maintaining said transportation system pursuant to the written contract, heretofore referred to, entered into between the defendant and the said Reeves and Callison, which contract was introduced in evidence as plaintiff's exhibit 'B' by stipulation of the parties.

"4. The court further finds that the city of Emporia, Kan., by resolution, duly enacted, voiced no objection to said contract, but specifically did not grant any rights to the said Reeves and Callison, nor waive any of its rights as against the defendant under its franchise and specifically reserved to said city its right to demand the faithful performance of the conditions of said franchise by the defendant under any and all circumstances, as disclosed by plaintiff's exhibit 'C' introduced in evidence in this case by stipulation of the parties.

"5. The court further finds that on September 1, 1937, the said Reeves and Callison, a partnership, by and through Ernest Callison, orally employed the plaintiff as a mechanic and as an employee of the said Reeves and Callison to keep in repair the buses used in the operation of the transportation system to

be maintained under said franchise, and that the said Reeves and Callison agreed to pay the said plaintiff the sum of forty cents per hour for his services.

"6. The court further finds that plaintiff, pursuant to said oral agreement, commenced work and performed labor and services as a mechanic for the said Reeves and Callison continuously from noon, September 1, 1937, to noon, October 14, 1937, and that, pursuant to said agreement, said plaintiff worked at least four hundred and thirty hours as a mechanic for the said Reeves and Callison, and is entitled to forty cents per hour for four hundred and thirty hours of work, or one hundred and seventy-two ($172) dollars for the services and work so performed by said plaintiff."

The trial court concluded the provisions of G. S. 1935, 44-306, were applicable and that the defendant was liable for the wages of the plaintiff in the same manner and to the same extent as Reeves and Callison, who had employed the plaintiff. That section provides:

"Whenever any such corporation shall contract any or all of its work to any contractor, then it shall become the duty of such corporation to provide that the employees of such corporation or contractor shall be paid according to the provisions of this act, and such corporation shall become responsible and liable to the employees of such contractor in the same manner as if said employees were employed by such corporation."

The trial court further concluded:

"From a careful examination of plaintiff's exhibit 'B,' being the agreement entered into between the defendant and Reeves and Callison, it is apparent that the defendant did not sell the franchise to the said Reeves and Callison, and that the city did not approve any such sale, but that the defendant merely, under said contract, delegated the operation of the transportation system, to be maintained under said franchise, to the said Reeves and Callison for the period of five years, and that the defendant merely delegated the work and service of maintaining a transportation system to the said Reeves and Callison for a period and term of five years under the terms, conditions and restrictions set forth in said contract.

"There is no question in the mind of the court but that the defendant *contracted its work of maintaining a transportation system in the city of Emporia to the said Reeves and Callison and that the said Reeves and Callison was a contractor within the meaning of said section."* (Italics inserted.)

The defendant contends Reeves and Callison were not contractors who were doing work for it, but were lessees or assignees of a franchise and were engaged in an independent enterprise. Defendant also insists it exercised no supervision or control over the business management and operations under Reeves and Callison. It further urges it paid nothing to the latter for the operation of the transportation system.

We need not determine whether the facts in the instant case are such as would constitute Reeves and Callison independent con-

tractors within a strict and technical sense under other relations and circumstances. The question here is whether they should be regarded as contractors, in the instant case, in view of the apparent intent and purpose of the act in question. The answer must be found not only in the letter but in the spirit of the act, and in the terms and provisions of the contract involved. Let us first see whether Reeves and Callison were engaged in the operation of an independent enterprise as urged by defendant. That the franchise itself was not sold and that the fixed term over which Reeves and Callison were authorized to operate the transportation system as an independent enterprise, free from conditions and restrictions placed upon them by the defendant, will be amply disclosed by an analysis of the contract. Furthermore, as will presently appear, the city of Emporia refused to release defendant from its liability and responsibility under the franchise even for the limited five-year period. It may also be conceded the evidence did not disclose interference by defendant with the details of actual operation during the brief period Reeves and Callison were in charge. That fact alone, however, can hardly be said to constitute operation of an independent enterprise by Reeves and Callison. The contract itself, in a very real sense, constituted an instrument of supervision and control by defendant in important respects. It contained numerous specific provisions as to the manner and method of operation in default of which defendant retained the right to demand and assume immediate possession and control. The contract made mandatory the employment by Reeves and Callison of all bus drivers of the defendant company. It also provided these bus drivers could be discharged only for cause. The contract designated the location of the principal office and the location of a repair shop. It prescribed definitely the number and type of new buses Reeves and Callison would be required to furnish and the time within which they were to be placed in operation. In the contract defendant at least participated, if it did not in fact determine, the time schedule of buses. The contract actually fixed in advance the various rate schedules. It also required Reeves and Callison to carry liability and property damage insurance in an amount fully adequate to cover any liability which Reeves and Callison might incur for personal injuries or property damage. It required Reeves and Callison to execute a surety bond in a sum of not less than $10,000 in favor of defendant, conditioned upon the faithful performance of the agreement. Clearly these vari-

ous requirements and restrictions cannot well be said to be in harmony with the theory of operating an independent enterprise nor with the theory of operating independently the enterprise of another. When the terms and provisions of this contract are construed in their entirety, as they must be, we think the trial court correctly concluded it was in substance a contractual delegation of authority to operate the bus business under defendant's franchise. This we think was sufficient, within the intent and purpose of G. S. 1935, 44-306, to render the defendant liable for plaintiff's wages.

Defendant urges Reeves and Callison were not contractors as it paid them nothing for their services. The form of the compensation is not very material if in fact material at all. True, the record discloses no direct payment from defendant to Reeves and Callison for operating the system. We must assume, however, that the benefits which were intended to flow from defendant to Reeves and Callison, under the terms of the contract, must have been regarded by the latter as satisfactory compensation for the performance of the contract.

Defendant urges a franchise is subject to sale. (*City of Potwin Place v. Topeka Rly. Co.*, 51 Kan. 609, 33 Pac. 309; *Utilities Co. v. Railway Co.*, 108 Kan. 285, 195 Pac. 889.) That may be conceded as an abstract proposition, but it does not require a reversal of the judgment in the instant case. What were the terms, conditions and restrictions of the original franchise under which defendant obtained its grant of authority? We do not know. The terms of that franchise have not been presented to us. We do have before us the resolution which was adopted by the governing body of the city of Emporia when the instant contract, between the defendant and Reeves and Callison, was submitted to the city. The resolution clearly indicates the city refused to release defendant from its liability and responsibility to operate under the franchise. The pertinent portion of that resolution provided:

"Now, therefore, be it resolved that the governing body of the city of Emporia, Kan., has no objections to said contract and the terms and conditions thereof, it being specifically understood that the city, in taking this action, does not grant any rights to said Reeves and Callison nor waive any of its rights as against the said The Kansas Electric Power Company under its franchise, and specifically reserving to said city its rights to demand the faithful performance of the conditions of said franchise by the said The Kansas Electric Power Company under any and all circumstances."

In view of all these circumstances we think the trial court correctly concluded that Reeves and Callison were contractors within the intent and purpose of G. S. 1935, 44-306, and that defendant was liable for the unpaid wages.

What about plaintiff's cross-appeal on the question of his right to recover a penalty from defendant by reason of the failure of Reeves and Callison to pay the wages due? G. S. 1935, 44-307, provides:

"It shall be unlawful for any firm or corporation *employing labor* within this state, to refuse or neglect to pay to any person leaving its service either by resignation or discharge any money due as wages within ten days from the termination of such services, and such payment must be made either at the place of discharge or at any office of such company or corporation within the state *as may be designated by the party employed, he giving notice in writing, to the foreman or party* in charge of such work." (Italics inserted.)

The trial court ruled against the penalty claim on the ground that this section applied only to a firm or corporation which actually employed the workman. Plaintiff, a mechanic, was employed by Reeves and Callison and not by the defendant. In view of the record before us it is unnecessary to decide whether liability for a penalty is necessarily, and under all circumstances, restricted to the party actually employing the laborer. Irrespective of that question, the demurrer was properly sustained. The lawmakers have prescribed the conditions under which the penalty may be imposed. Failure to comply with the statutory conditions defeats the claim. The conditions are few and practical. The demand must be in writing, addressed to the foreman or party in charge of the work, and it must designate as the place of payment one of the places named in the statute. (*Hurt v. Edgell,* 147 Kan. 234, 75 P. 2d 834; *Gawthrop v. Missouri Pac. Rly. Co.,* 147 Kan. 756, 78 P. 2d 854.) With these conditions precedent plaintiff failed to comply.

The judgment is affirmed.